319 F.3d 1320
 WASHOE COUNTY, NEVADA; Western Water Development Co., Inc. and Hawthorne-Nevada, Inc. (doing business as Truckee Meadows Project Partnership); and Northwest Nevada Water Resources Limited Partnership, Plaintiffs-Appellants,
v.
UNITED STATES, Defendant-Appellee.
 No. 02-5039.
 United States Court of Appeals, Federal Circuit.
 January 28, 2003.
 Rehearing Denied March 27, 2003.
 
 Richard J. Conway, Dickstein Shapiro Morin & Oshinsky LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Bernard Nash, James vanR. Springer, C. Ernest Edgar IV, and Michael J. Slattery.
 Ethan G. Shenkman, Attorney, Environment & Natural Resources Division, Policy Legislation and Special Litigation Section, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Thomas L. Sansonetti, Assistant Attorney General; Kathryn E. Kovacs, and Fred R. Disheroon, Attorneys, Appellate Section.
 Before CLEVENGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and PROST, Circuit Judge.
 PROST, Circuit Judge.
 
 
 1
 Appellants, Washoe County, Nevada, Western Water Development Co. Inc. and Hawthorne-Nevada, Inc. (doing business as Truckee Meadows Project Partnership), and Northwest Nevada Water Resources Limited Partnership (collectively "Appellants"), appeal the decision of the United States Court of Federal Claims granting summary judgment to the United States and denying their motion for partial summary judgment. The court held that the government did not effect a taking of Appellants' private property, specifically their water rights. Because we agree with the court that a taking was not effectuated, we affirm.
 
 BACKGROUND
 
 2
 In the State of Nevada all water sources within the state belong to the public. Nev. Rev.Stat. 533.025. Although a water right is property subject to constitutional protection, it is usufructuary in nature, meaning that it is a "right to use" water in conformance with applicable laws and regulations. At issue in this case is the Fish Springs Ranch ("Ranch") and its appurtenant groundwater, located in the Honey Lake Valley of Washoe County, Nevada, near the California border. Located approximately ten miles east of the Ranch is Pyramid Lake, home to the Pyramid Lake Tribe of Indians ("the Tribe"). Approximately eight miles west of the Ranch, in Lassen County, California, is a United States Army Depot ("the Army"). The Ranch is located approximately forty miles north of the Reno-Sparks metropolitan area, also a part of Washoe County.
 
 
 3
 In the mid-1980s, the principals of Northwest Nevada Water Resources Limited Partnership ("Northwest Nevada") acquired title to the Ranch and its appurtenant ground and surface water rights. The water rights held by the principals of Northwest Nevada permitted them to draw certain quantities of groundwater from wells located on the Ranch and to use the water for agricultural purposes within the Honey Lake Valley. The principals formed the Northwest Nevada partnership in 1987 after realizing that they could sell their water rights, rights associated with the water on the Ranch as well as other water sources, to the Reno-Sparks metropolitan area for municipal and industrial ("M & I") use.
 
 
 4
 In April 1988, Appellant Washoe County entered into an agreement with Northwest Nevada pursuant to which Washoe County acquired an option to purchase all the interest in Northwest Nevada's water rights.[1] The agreement also provided Washoe County the right to change the place of use, manner of use, and rate of diversion of the water associated with Northwest Nevada's water rights.
 
 
 5
 In 1989, Washoe County applied to the Nevada State Engineer to change the use authorized under state law for the water resources on the Ranch to M & I use at Reno-Sparks. The Ranch's neighbors, the Army and the Tribe, objected to the granting of the application because of the effect diverting water from the Honey Lake Valley to Reno-Sparks would have on them. Notwithstanding these objections, the State Engineer granted the application authorizing reallocation of the water represented by Northwest Nevada's water rights from agricultural use in the Honey Lake Valley to M & I use at Reno-Sparks. The Nevada Supreme Court upheld the State Engineer's ruling. See Pyramid Lake Paiute Tribe of Indians v. Washoe County, 112 Nev. 743, 918 P.2d 697 (1996).
 
 
 6
 Neither party disputes that the only feasible method to transport the water from the water source on the Ranch to Reno-Sparks was by pipeline over federal land. So, in 1989, Washoe County applied to the Bureau of Land Management ("BLM") of the Department of the Interior for a right-of-way permit. In compliance with the requirement that prior to issuing a right-of-way permit the BLM must complete an Environmental Impact Statement ("EIS"), the BLM distributed a draft EIS for comment. Both the Army and the Tribe expressed objections to it. The decision as to whether to proceed further with development of a final EIS was elevated to the Secretary of the Interior. The Secretary was apprised of the objections to the granting of the right-of-way permit, including those expressed by the Army and the Tribe. In response, he issued an order in March 1994 directing the BLM to suspend work on the EIS until three issues were resolved with the concurrence of the United States Geological Survey, the Army, and the Tribe. Two of the three issues involved the Army's and the Tribe's objections to diverting water on the Ranch from the Honey Lake Valley. Washoe County was unsuccessful in obtaining the acquiescence of the Army and the Tribe for the right-of-way permit. Therefore, Appellants could not proceed with their planned pipeline construction.
 
 
 7
 Appellants filed suit in the Court of Federal Claims claiming that the government's denial of Washoe County's right-of-way permit application constituted a taking of their water rights. The parties agreed that there were no genuine issues of material fact in dispute. The court granted the government's cross-motion for summary judgment and denied Appellants' motion for partial summary judgment after concluding that the government's actions did not effect either a physical or a regulatory taking.
 
 
 8
 Appellants filed a timely appeal and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).
 
 DISCUSSION
 
 9
 * At the outset, the government argues that Appellants' takings claim is not ripe for review because the Secretary of the Interior never reached a final decision as to whether to grant or deny Washoe County's application for a right-of-way permit.[2] The government reasons that the Secretary's March 1994 order merely suspended further processing of Washoe County's application until progress was made on the issues mentioned in the order. The government likens this case to Howard W. Heck, & Associates, Inc. v. United States, 134 F.3d 1468, 1471-72 (Fed.Cir.1998), in which this court held that the Army Corps of Engineers' removal of Heck's application for a Clean Water Act permit from active consideration, based on Heck's failure to submit the requisite information, did not constitute a final decision.
 
 
 10
 Appellants maintain that their takings claim is ripe for adjudication because the Secretary's March 1994 order constituted a final decision to deny Washoe County's application for a right-of-way permit under relevant Supreme Court precedent. Appellants reason that the Secretary ensured the failure of Washoe County's right-of-way application by granting veto power over the permit to the Army and the Tribe knowing that their interests were adverse to those of Washoe County.
 
 
 11
 We reject the government's position that ripeness is lacking and conclude that Appellants' takings claim is ripe for review. We review de novo whether the Court of Federal Claims possessed jurisdiction. Wheeler v. United States, 11 F.3d 156, 158 (Fed.Cir.1993). Takings claims arising from the application of government regulations are not ripe until the government entity charged with implementing the regulation has reached a final decision. MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 349-51, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986). A takings claim is ripe, however, "once ... the permissible uses of the property are known to a reasonable degree of certainty." Palazzolo v. Rhode Island, 533 U.S. 606, 620, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). Furthermore, a claimant must have first "followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion" so that the extent of the restriction on property is known. Id. at 620-21, 121 S.Ct. 2448. "Government authorities, of course, may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision." Id. at 621, 121 S.Ct. 2448; see also MacDonald, Sommer & Frates, 477 U.S. at 350 n. 7, 106 S.Ct. 2561. Thus, there is no requirement that a claimant "submit applications for their own sake" when there is no "uncertainty as to the [property's] permitted use." Palazzolo, 533 U.S. at 622, 121 S.Ct. 2448.
 
 
 12
 Given the record in the instant case, it is clear that there was no further "reasonable and necessary step[]" Washoe County could have taken to allow the BLM an opportunity to exercise its full discretion in acting upon Washoe County's permit application. Id. at 620-21, 121 S.Ct. 2448. Indeed, the government on appeal has not identified any further administrative step available to Washoe County in order for it to have obtained further finality in the permit application process other than suggesting that Washoe County could have filed an Administrative Procedure Act action in federal district court to compel agency action unlawfully withheld or unreasonably delayed. This is precisely why the government's reliance on Heck is misplaced. This court's determination that ripeness was lacking in Heck was premised on "Heck's unexcused failure to submit the statutorily-required state water quality certificate ... to support its federal permit application." 134 F.3d at 1470. There is no dispute in this case that Washoe County complied with every requirement necessary to obtain a right-of-way permit. The sole reason Washoe County's permit application was not further processed in this case, i.e., by completing the requisite final EIS, was due to the Secretary's decision to suspend work on the EIS. See 43 C.F.R. § 2802.4(d)(1) (2002). Thus, unlike Heck, this is not a case in which the deficiency of completeness in the application process was attributable to the claimant.
 
 
 13
 In addition, that Washoe County was not going to be granted a pipeline right-of-way permit by the BLM was known to a reasonable degree of certainty. The Secretary's March 1994 order suspended work on the final EIS until issues pertaining to the Army's and the Tribe's objections to the granting of a right-of-way permit were resolved with their concurrence and to their satisfaction. It is unequivocally clear from the record, however, that the Army's and Tribe's interests in keeping the water on the Ranch were inalterably adverse to granting Washoe County's application for a right-of-way permit. Thus, the BLM's failure to grant a right-of-way permit was based on an unchanging fact, the Army's and Tribe's consistent opposition to a right-of-way permit that would allow Washoe County, and the other Appellants, to divert water on the Ranch to another location. See Bayou des Familles Dev. Corp. v. United States, 130 F.3d 1034, 1040 (Fed.Cir.1997) (stating that a permit denial is final when the applicant has no appeal mechanism available and the denial is based on an unchanging fact). Allowing the government to prevent a claimant from pursuing a takings claim by conditioning approval of a claimant's permit request on the concurrence of another party who is reasonably certain not to provide such accord would not serve the purposes of the ripeness doctrine. Palazzolo, 533 U.S. at 620-21, 121 S.Ct. 2448. Thus, we conclude that Appellants' takings claim is ripe for review and the Court of Federal Claims properly exercised jurisdiction.
 
 II
 
 14
 As the case is ripe, we next turn to the merits of Appellants' takings claim. "Whether a taking compensable under the Fifth Amendment has occurred is a question of law based on factual underpinnings." Bass Enter. Prod. Co. v. United States, 133 F.3d 893, 895 (Fed.Cir.1998) (citations omitted). This court reviews the Court of Federal Claims' conclusions of law without deference. Mass. Bay Transp. Auth. v. United States, 254 F.3d 1367, 1372 (Fed.Cir.2001); Kane v. United States, 43 F.3d 1446, 1448 (Fed.Cir.1994); 5 U.S.C. § 706(2)(c) (2000).
 
 
 15
 On appeal, Appellants argue that the government's action preventing them from using their water rights amounted to a taking of that property by rendering their property useless under each of three distinct but related lines of authority. Specifically, relying on Laney v. United States, 228 Ct.Cl. 519, 661 F.2d 145 (1981), Appellants first argue that by refusing to issue Washoe County a pipeline right-of-way across federal land, the government prevented them from using their property at the only location permitted by state law, Reno-Sparks, rendering their property useless. Appellants next rely on United Nuclear Corp. v. United States, 912 F.2d 1432 (Fed.Cir.1990), to argue that by conditioning Washoe County's ability to obtain a right-of-way permit upon receiving approval by the Army and the Tribe of the proposed use of the groundwater, the government gave these agencies veto power over whether Washoe County, and hence the other Appellants, could use their property, rendering their property valueless. Lastly, Appellants, relying on Tulare Lake Basin Water Storage District v. United States, 49 Fed. Cl. 313 (2001), argue that by declining to grant Washoe County a right-of-way permit, the government ensured that their groundwater remained in the aquifer for use by the Army constituting a literal taking of their water-rights property for government use.[3]
 
 
 16
 The government counters that Appellants have not established a taking and distinguishes the cases upon which they rely. The Court of Federal Claims granted the government's summary judgment motion and denied Appellant's motion for partial summary judgment after concluding that the government's actions did not constitute either a physical or a regulatory taking. We agree that Appellants have not established a taking of their property.
 
 
 17
 The Supreme Court has recognized two kinds of takings: physical takings and regulatory takings. See Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1014-15, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). A physical taking generally occurs when the government directly appropriates private property or engages in the functional equivalent of a "`practical ouster of [the owner's] possession.'" Id. at 1014, 112 S.Ct. 2886 (citation omitted). In the context of water rights, courts have recognized a physical taking where the government has physically diverted water for its own consumptive use or decreased the amount of water accessible by the owner of the water rights. See Dugan v. Rank, 372 U.S. 609, 625-26, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (finding a taking where the government diverted water at a dam from downstream owners of water-rights for public purposes); Int'l Paper Co. v. United States, 282 U.S. 399, 407-08, 51 S.Ct. 176, 75 L.Ed. 410 (1931) (finding a taking where the government ordered diversion of water from the owners of water-rights for use in government power production); Tulare, 49 Fed. Cl. at 320 (stating that a deprivation of water from the owner of the water rights amounts to a physical taking). Courts have also recognized a taking where the government denies all meaningful access to the claimant's private property. See, e.g., Laney, 661 F.2d at 147-49[4]; Foster v. United States, 221 Ct.Cl. 412, 607 F.2d 943 (1979); Drakes Bay Land Co. v. United States, 191 Ct.Cl. 389, 424 F.2d 574 (1970). With regard to "regulatory takings," although the Supreme Court has declined to set out a precise formula for determining whether a regulatory taking has occurred, these types of takings generally involve the regulation of private property. See Lucas, 505 U.S. at 1014-15, 112 S.Ct. 2886.
 
 
 18
 The government did not effect a physical taking here because it neither physically appropriated nor denied meaningful access to Appellants' water rights. Appellants contend that by declining to grant Washoe County a pipeline right-of-way permit the government physically appropriated the water represented by their Reno-Sparks M & I rights for the government's own use by ensuring that the water remained in the aquifer. The cases relied upon by Appellants, however, do not support their position. Appellants place particular importance on Tulare, a case in which they contend the Court of Federal Claims found a taking based on government conduct directly analogous to that in this case.
 
 
 19
 We conclude, however, that Tulare (which is not a binding precedent in this court) does not support Appellants' taking claim. In Tulare, the plaintiffs included county water districts that had contracted with a state agency for "the right to withdraw or use prescribed quantities of water" stored in a state water project. 49 Fed. Cl. at 315. To protect certain fish species pursuant to the Endangered Species Act, however, federal and state agencies restricted pumping from the water projects. Id. The Court of Federal Claims found that the contracts had conferred on plaintiffs an identifiable property interest in a stipulated amount of water and that the restrictions prevented the plaintiffs from receiving the full amount of water to which they were entitled under the contracts. Id. at 318-20. The court reasoned that the government had physically appropriated the plaintiffs' water because its actions were no different than if the government had physically diverted water for its own consumptive use. Id. at 319-20. In the instant case, the government has neither physically diverted or appropriated any water nor physically reduced the quantity of water that is available to the Appellants from the water source on the Ranch.
 
 
 20
 Cases finding a taking where the government denies all meaningful access to plaintiffs' private property also do not buttress Appellants' takings claim because the government did not deny Appellants access to their water rights. As the Court of Federal Claims recognized below, the government has not affected Appellants' water rights except by denying permission to use the government's own land to exploit those rights. Moreover, Appellants' constitutionally protected property was the right to use the water on the Ranch. See Int'l Paper, 282 U.S. at 407, 51 S.Ct. 176 (stating that petitioner's right was to the use of the water). Thus, the State Engineer did not confer an additional or separate and distinct water right. The State Engineer only authorized a change in place and manner of use of its pre-existing water rights from agricultural use to M & I use. See Pyramid Lake Paiute Tribe of Indians, 918 P.2d at 698. Appellants still retained their right to use the water after the government denied Washoe County's pipeline right-of-way application. Indeed, Appellants do not dispute that they exercised that right by using the water for its original agricultural use, albeit because they were unable to perfect the new M & I use. See, e.g., Nev.Rev.Stat. 533.060, 533.380, 533.395 (Appellants would need to actually put the water to the new use in the new location to perfect those new use water rights). Therefore, the government did not prevent Appellants from accessing their water rights. Because the government neither physically diverted or reduced the amount of water accessible by Appellants nor denied all meaningful access to their water rights, it did not effect a physical taking.
 
 
 21
 Appellants also have not established a regulatory taking because regulation of private property was not at issue here. See Lucas, 505 U.S. at 1014-15, 112 S.Ct. 2886; Pa. Coal Co. v. Mahon, 260 U.S. 393, 394-95, 43 S.Ct. 158, 67 L.Ed. 322 (1922); United Nuclear Corp., 912 F.2d at 1440. In Lucas and the other "regulatory takings" cases, property owners claimed that government regulation of their private property has gone "too far." 505 U.S. at 1014, 112 S.Ct. 2886 (citation omitted). The government in the instant case, however, was not acting in its regulatory capacity when it denied Washoe County a right-of-way permit.[5] Washoe County applied for a right-of-way to build a pipeline on federal land. Washoe County and the other Appellants had no right to build on federal land and thus no interest in the land. The government applied internal regulations concerning the federal government's management of public lands to determine whether to grant a right-of-way on property it owns. Thus, the government in no way imposed regulatory restrictions on the use of Appellants' private property, neither the land nor the groundwater rights appurtenant to the land. For example, the government did not limit the Appellants' access to their wells, restrict the amount of groundwater they could pump, or dictate what they could do with the water. Rather, the government was acting as a landowner whose neighbor sought permission to lay a pipeline across its property. However, the government had no obligation as a neighbor to assist Washoe County or the other Appellants in putting their water rights to the most profitable use or to pay just compensation because the State of Nevada granted Washoe County authorization under state law to make a particular use of the water on the Ranch. Because the government did not impose any regulations on Appellants' water rights, it did not effect a regulatory taking.
 
 CONCLUSION
 
 22
 Having concluded that the government effected neither a physical nor a regulatory taking, we affirm the decision of the Court of Federal Claims granting summary judgment to the government and denying Appellants' motion for partial summary judgment.
 
 COSTS
 
 23
 In accordance with Fed.R.App. P. 39(a), costs are taxed against the Appellants.
 
 
 24
 
 AFFIRMED.
 
 
 
 
 Notes:
 
 
 [1]
 Washoe County never exercised this option
 
 
 [2]
 The government raised the ripeness issue in the Court of Federal Claims, but the court did not address it
 
 
 [3]
 Appellants also citeDugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), and International Paper Co. v. United States, 282 U.S. 399, 51 S.Ct. 176, 75 L.Ed. 410 (1931), in support of this argument.
 
 
 [4]
 As the government points out on appeal, the Court of Federal Claims did not find that a taking occurred in that case. Rather, inLaney, the court denied cross motions for summary judgment and remanded for further factual development. 661 F.2d at 150.
 
 
 [5]
 This is yet another reasonLaney is distinguishable from this case. In Laney, the property at issue was subject to federal regulation of navigable waters. 661 F.2d at 146-48. Thus, the government was acting in its regulatory capacity when denying the property owner permission to construct a concrete pier and connect the pier to his island so that it would be accessible by boat. Id.