NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**GENE CHITTENDEN, ALLEN D. HALL,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2016-2148

_____

Appeal from the United States Court of Federal Claims in No. 1:14-CV-00632, Judge Elaine Kaplan.

_____

Decided: October 27, 2016

_____

GENE CHITTENDEN, Auburn, CA, pro se.

ALLEN D. HALL, North San Juan, CA, pro se.

ERIKA KRANZ, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant-appellee. Also represented by JOHN C. CRUDEN.

_____

Before PROST, *Chief Judge,* TARANTO and HUGHES,
*Circuit Judges.*

PER CURIAM.

Gene Chittenden and Allen Hall hold mining claims
on two lode mines located in the Tahoe National Forest in
California.  After the United States Forest Service in-
stalled bat gates on the shaft and portal of the two mines,
Mr. Chittenden and Mr. Hall sought damages for, among
other things, an uncompensated taking in violation of the
Fifth Amendment.  The Court of Federal Claims granted
summary judgment in favor of the government after
determining that the installation of the bat gates did not
deprive claimants of the ability to develop their mining
claims and therefore no taking occurred.  Because we find
that there is no genuine issue of material fact, the Court
of Federal Claims did not err in ruling that the govern-
ment was entitled to summary judgment and thus we
affirm.

I

Mr. Chittenden and Mr. Hall (claimants) hold mining
claims on two lode mines—the Roye Sum lode mine and
the Dolliegeek lode mine—located in the Tahoe National
Forest in California.  In November 2009, the Forest
Service received a report that the Roye Sum mine con-
tained a bat colony.  Dave Brown, an Assistant Minerals
Officer for the Forest Service, asked Mr. Hall if he would
be willing to allow a bat biologist access to the mine to
conduct an assessment.  Mr. Hall denied the request.
Nevertheless, the District Biologist and the Regional Bat
Coordinator visited the Roye Sum mine on July 6, 2010,
and recommended that the Forest Service install bat-
friendly gates on the mine portal and the mine shaft.

Based on this recommendation, the Forest Service in-
stalled two bat gates in the Roye Sum mine on October
12, 2010.  The bat gate covering the mine shaft was made

of five 36-inch steel bars. Beneath the gate, the Forest Service also installed a short length of 36-inch diameter pipe (or "culvert") inside the mine shaft. The gate across the mine portal was made of four vertical steel bars anchored into a concrete base and seven removable horizontal steel bars. In November 2010, Mr. Brown provided Mr. Hall with a key to remove the horizontal bars so that he could access the mine.

On July 21, 2014, claimants filed suit against the United States in the Court of Federal Claims seeking $50,000,000 in damages alleging, among other things, that the installation of the bat gates resulted in an uncompensated taking under the Fifth Amendment. The Court of Federal Claims granted summary judgment in favor of the government after determining that no taking occurred.

Claimants appeal.[1] We have jurisdiction under 28 U.S.C. § 1295(a).

## II

This Court reviews the Court of Federal Claims' grant of summary judgment de novo. *M & J Coal Co. v. United States*, 47 F.3d 1148, 1152 (Fed. Cir. 1995). Specifically, we review the record de novo to determine whether any genuine issue of material fact exists, and if not, whether the movant is entitled to judgment as a matter of law. *Id.*

"To encourage private development of mineral deposits, federal law permits private parties to discover, explore, and reclaim mineral deposits in federally-owned lands." *Kunkes v. United States*, 78 F.3d 1549, 1550 (Fed.

---

[1] The Court of Federal Claims dismissed claimants' due process and tort claims for lack of jurisdiction. These claims have not been appealed.

Cir. 1996). Therefore, pursuant to the Mining Act of 1872, claimants "have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins, lodes, and ledges throughout their entire depth . . . ." 30 U.S.C. § 26.

Acquiring an interest in federal land for mining purposes is known as an "unpatented mining claim," which is "an interest in only the minerals in the land and not in the land's surface; the government retains fee title to the land." *Ford v. United States*, 101 Fed. Cl. 234, 238 n.6 (2011). Therefore, "[a]lthough unpatented mining claims are fully recognized possessory interests, they partake more of the character of use rights." *Kunkes*, 78 F.3d at 1554 (internal citation and quotation marks omitted).

The Fifth Amendment to the United States Constitution provides that private property shall not "be taken for public use without just compensation." U.S. Const. amend. V, cl. 4. To evaluate whether a governmental action constitutes a taking of private property without just compensation, we must first determine "whether the claimant has established a 'property interest' for purposes of the Fifth Amendment." *Maritrans Inc. v. United States*, 342 F.3d 1344, 1351 (Fed. Cir. 2003); *see also M & J Coal Co.*, 47 F.3d at 1153–54. If a valid property interest exists, we then determine if a taking occurred. *Id.*

Claimants assert that they possess a cognizable property interest in their unpatented mining claims. Although unpatented mining claims are protected by the Fifth Amendment against uncompensated takings, *see Kunkes*, 78 F.3d at 1551, they are only "valid against the United States if there has been a discovery of mineral within the limits of the claim, if the lands are still mineral, and if other statutory requirements have been met." *Best v. Humboldt Placer Min. Co.*, 371 U.S. 334, 336 (1963). "The [Bureau of Land Management] has primary jurisdiction to determine the validity of mining claims[.]"

*Freeman v. United States*, 83 Fed. Cl. 530, 533 (2008). Here, the Bureau of Land Management has not conducted a validity determination, but for purposes of this analysis, we assume that claimants' mining claims are valid. Therefore, we must determine if a taking has occurred.

Claimants allege that an uncompensated taking has occurred because the installation of the two bat gates constitutes a "permanent physical occupation" and denies them "meaningful access."[2] Pet. Br. 8–9. Generally, a permanent physical occupation of an owner's property, authorized by the government, is a taking for which just

---

[2] Claimants also allege that the Forest Service did not have authority to install the bat gates because the Forest Service may not conduct activities that endanger or materially interfere with mining, or related operations or activities on the mining claim. Pet. Br. 13–18. However, a "claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act[.]" *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993). This is because "an uncompensated taking and an unlawful government action constitute two separate wrongs that give rise to two separate causes of action," and therefore, "a property owner is free either to sue in district court for asserted improprieties committed in the course of the challenged action or to sue for an uncompensated taking in the Court of Federal Claims." *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365 (Fed. Cir. 2001) (internal quotation marks and citation omitted). By alleging that an improper taking occurred, claimants must litigate their takings claim on the assumption that the Forest Service had the proper authority to install the bat gates, and therefore, any arguments related to the Forest Service's authority to install the bat gates are irrelevant in determining whether or not a taking occurred.

compensation is due under the Fifth Amendment.  *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982).  Here, however, the United States retains fee title in the property and claimants have a possessory interest in the mining claims.  Neither *Loretto* nor other authority cited by claimants supports treating the placement of the bat gates as a permanent physical occupation sufficient for compensation under the Fifth Amendment.

Additionally, a physical taking may occur if the government denies meaningful access to claimants' mining claims.  *See Washoe Cty., Nev. v. United States*, 319 F.3d 1320, 1326 (Fed. Cir. 2003).  However, the United States, "as owner of the underlying fee title to the public domain, maintains broad powers over the terms and conditions upon which the public lands can be used, leased, and acquired."  *United States v. Locke*, 471 U.S. 84, 104 (1985).  "Claimants thus must take their mineral interests with the knowledge that the Government retains substantial regulatory power over those interests."  *Id.* at 105.

Therefore, claimants' property interest is limited by the regulations issued by the United States Forest Service.  *See* 30 U.S.C. § 612(b) (mining claims "shall be subject, prior to issuance of patent therefor, to the right of the United States to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof (except mineral deposits subject to location under the mining laws of the United States)").  Under 36 C.F.R. § 228.4(a), claimants must submit "a notice of intent to operate" for "operations which might cause significant disturbance of surface resources."  However, claimants have not submitted a notice of intent, and therefore their operations are limited to those that will not cause significant surface disturbance, which includes "prospecting and sampling . . . [that] will not involve removal of more than a reasonable amount of mineral deposit for analysis and study," 36 C.F.R.

§ 228.4(a)(1)(ii), and "[o]perations which will not involve the use of mechanized earthmoving equipment, such as bulldozers or backhoes, or the cutting of trees," *id.* § 228.4(a)(1)(vi).

Here, claimants assert that the bat gates have denied them meaningful access to their mining claims because they cannot conduct "ordinary mining activities" or use "modern mining machinery," Pet. Br. at 9, 21, and have thus been "deprived of all economic use of the mines," *id.* at 9. However, claimants, at this time, may not conduct "ordinary mining activities," or use "modern mining machinery" because they are limited to those activities permissible before submission of the notice of intent. Moreover, the undisputed declaration of Mr. Brown, the Assistant Minerals Officer for the Forest Service, stated that the bat gates installed at the Roye Sum mine "do not prevent Mr. Chittenden and Mr. Hall from performing underground operations that will not cause a significant surface resource disturbance." Appx. 83.

Because there is no genuine issue of material fact regarding whether the bat gates constitute a permanent physical occupation or deny claimants meaningful access to the mines for the purposes of conducting the limited, permissible activities, the Court of Federal Claims did not err in ruling that the government was entitled to summary judgment.

**AFFIRMED**

No costs.