# United States Court of Appeals for the Federal Circuit

05-1595

LOUISVILLE BEDDING COMPANY,

Plaintff-Appellant,

v.

PILLOWTEX CORPORATION,

Defendant.

     Hartwell P. Morse, III, Welsh & Katz, Ltd., of Chicago, Illinois, argued for plaintiff-appellant.  With him on the brief was Philip D. Segrest, Jr.

Appealed from:  United States District Court for the Western District of Kentucky

Judge Charles R. Simpson, III

# United States Court of Appeals for the Federal Circuit

05-1595

LOUISVILLE BEDDING COMPANY,

Plaintiff-Appellant,

v.

PILLOWTEX CORPORATION,

Defendant.

_____

DECIDED:  July 25, 2006

_____

Before LOURIE, SCHALL, and PROST, Circuit Judges.

LOURIE, Circuit Judge.

Louisville Bedding Company appeals from the decision of the United States District Court for the Western District of Kentucky denying Louisville's motion for partial relief from the court's final judgment of noninfringement.  Louisville Bedding Co. v. Pillowtex Corp., No. 3:94CV-722-S (W.D. Ky. Aug. 4, 2005).  Because the district court did not abuse its discretion in denying Louisville's motion, we affirm.

## BACKGROUND

Louisville manufactures and sells home furnishing products, including mattress pads.  It is also the owner of U.S. Patent 5,249,322, entitled "Fitted Mattress Cover and Method of Making Same."  The '322 patent covers a mattress pad with a pad skirt

material that is capable of expanding to cover mattresses of varying thickness. In separate actions, Louisville filed suit against Pillowtex Corporation in 1994 and Perfect Fit Industries, Inc. in 1998, accusing both of infringing the '322 patent. Both Pillowtex and Perfect Fit are competing manufacturers and sellers of mattress pads. Both cases were eventually terminated via settlement agreements, and the district court in each of the cases entered final judgment.

Since its settlement with Louisville in 1998, Pillowtex has, according to Louisville, gone out of business. Based on events that occurred in the mattress pad industry after Pillowtex went out of business and what Louisville perceives to be a conflicting judgment that issued from its case against Perfect Fit, Louisville sought to reopen the Pillowtex case and have the district court in that case vacate a portion of its final judgment. In a summary order issued after a hearing, the court denied Louisville's motion.

A brief recitation of the litigation history of Louisville against both Pillowtex and Perfect Fit is provided below.

I.    Pillowtex Litigation

In December 1994, Louisville filed suit against Pillowtex for infringement of the '322 patent by, inter alia, sale of its mattress pad model that used Xymid, LLC's 4059 skirt material ("the 4059 mattress pad"). In October 1997, the district court construed certain claim limitations of the '322 patent and granted summary judgment of noninfringement with respect to the 4059 mattress pad. In March 1998, the parties reached a settlement as to the Pillowtex mattress pad models accused of infringing Louisville's patents, including the 4059 mattress pad and the '322 patent. Under the

05-1595                                    2

settlement agreement, Pillowtex paid Louisville a sum of money and took a license to numerous of its patents, including the '322 patent. Pillowtex also agreed to mark the 4059 mattress pad as licensed under Louisville's patents, including the '322 patent. In April 1998, on the parties' joint motion, the court entered a final judgment dismissing with prejudice all claims that were or could have been asserted except Louisville's claims relating to the 4059 mattress pad. With respect to the 4059 mattress pad, the court entered final judgment that that mattress pad did not infringe, either literally or under the doctrine of equivalents, claims 1, 2, 4, 8, 10-13, 16, 18, 28, 34-37, 41, and 42 of the '322 patent.

After the parties' settlement, Pillowtex filed for bankruptcy in 2000 and again in 2003, and, according to Louisville, Pillowtex was dissolved in 2003.[1] One ramification of Pillowtex's dissolution was that Xymid, a spin-off of a DuPont division with whom Pillowtex originally had an exclusive supply agreement and who is currently the exclusive manufacturer of the 4059 mattress pad skirt material, was no longer bound by its exclusive supply agreement with Pillowtex. Free from that agreement, Louisville asserts, Xymid began selling its 4059 mattress pad skirt material to other manufacturers of mattress pads, including Perfect Fit and National Sleep Products ("NSP").

## II.   Perfect Fit Litigation

In 1998, soon after the Pillowtex matter was settled, Louisville filed suit against Perfect Fit for infringement of the '322 patent. The Perfect Fit action was filed in the same district court as the Pillowtex action was, and the court determined that it would give the claim construction from the earlier Pillowtex action collateral estoppel effect.

---

[1]     Pillowtex has not made an appearance in this appeal. For purposes of this appeal, we will therefore accept Louisville's factual assertions as true.

As in the Pillowtex case, Perfect Fit and Louisville settled their suit by having Perfect Fit take a license to the '322 patent and agreeing to mark Perfect Fit's mattress pads accused of infringement as licensed under the '322 patent. The settlement also contained a provision requiring Louisville and Perfect Fit to resolve future disputes involving potential infringement of the '322 patent through alternative dispute resolution ("ADR") means.

In 2003, Perfect Fit contacted Louisville to activate the ADR provision for determining possible infringement by its new mattress pad materials. Once Pillowtex went out of business, Xymid's exclusive supply arrangement with Pillowtex for the 4059 mattress pad skirt material was effectively terminated. Xymid then began supplying Perfect Fit with the 4059 mattress pad skirt material. Pursuant to the ADR provision, the parties selected an arbitrator to determine whether Xymid's 4059 skirt material would infringe the '322 patent if it were used in Perfect Fit's mattress pads. The arbitrator concluded that it would literally infringe the patent. In reaching his decision, the arbitrator determined that he was not bound by the claim construction from the earlier Pillowtex and Perfect Fit litigations, and instead construed the claims independently. In February 2005, the district court, on Louisville's motion, entered judgment on the arbitrator's award precluding Perfect Fit from manufacturing mattress pads using Xymid's 4059 skirt material.

III. Reopening the Pillowtex litigation

Despite the fact that Pillowtex and Louisville concluded their litigation in 1998, Louisville, in May 2005, filed a Rule 60(b)(6) motion to reopen the case and have the district court partially vacate its judgment of noninfringement of the '322 patent by the

4059 mattress pad. On August 4, 2005, after conducting a hearing, the district court denied Louisville's motion. Louisville timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

A district court's denial of a motion under Federal Rule of Civil Procedure 60(b)(6) is not a procedural issue unique to patent law, and thus we will apply the law of the regional circuit court, in this case, the Sixth Circuit. Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999). Moreover, the underlying reasons for Louisville's Rule 60(b)(6) motion, viz., a change of circumstances in the mattress pad marketplace and two possibly conflicting district court judgments, do not uniquely implicate patent law. Flex-Foot, Inc. v. CRP, Inc., 238 F.3d 1362, 1365 (Fed. Cir. 2001). The Sixth Circuit reviews a denial of a Rule 60(b)(6) motion for abuse of discretion. Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund, 249 F.3d 519, 524 (6th Cir. 2001).

On appeal, Louisville seeks to vacate the district court's judgment that the 4059 mattress pad does not infringe claims 34-37, 41, and 42 of the '322 patent and the claim construction underlying that judgment. Louisville contends that unforeseen events have occurred in the mattress pad marketplace since 1998 (when the Pillowtex matter was settled) that require us to vacate a portion of the district court's final judgment. According to Louisville, when it agreed to settle its suit against Pillowtex, Pillowtex and Xymid had an exclusive supply agreement for Xymid's 4059 mattress pad skirt material and there were no indications at that time that Pillowtex would soon go out of business. Louisville thus assumed, when it agreed to have the district court enter a final judgment

of noninfringement as to the 4059 mattress pad and thereby accept the underlying claim construction, that no other competitor would have access to Xymid's 4059 mattress pad skirt material.

Pillowtex, however, did go out of business in 2003, and Louisville now laments that it is being prejudiced by unlicensed competitors such as NSP that purchase Xymid's 4059 mattress pad skirt material and deprive it of sales. According to Louisville, it is in a defenseless position because of the noninfringement judgment and the claim construction from the Pillowtex case, which have collateral estoppel effect. Louisville argues that only by partially vacating that judgment can it be freed from the collateral estoppel effect and effectively obtain license revenue from its competitors who sell products using the Xymid 4059 mattress pad skirt material.

Louisville further argues that it is in the interest of justice to grant its motion because there are currently conflicting judgments as to the infringement of claim 34 of the '322 patent by mattress pads using Xymid's 4059 skirt material. According to Louisville, the final judgment in the Pillowtex case determined that the 4059 mattress pad did not infringe claim 34 of the '322 patent, but the district court in the Perfect Fit case entered a judgment confirming an arbitrator's determination that the Perfect Fit mattress pad would infringe claim 34 if it used Xymid's 4059 skirt material. Louisville asserts that granting its Rule 60(b)(6) motion for partial relief from the earlier judgment would be in the public interest by resolving this conflict.

We conclude that the district court did not abuse its discretion in denying Louisville's motion under Rule 60(b)(6). Typically, a district court may grant relief under Rule 60(b)(6) only for "exceptional or extraordinary circumstances." Jalapeno Prop.

Mgmt., LLC v. Dukas, 265 F.3d 506, 509 (6th Cir. 2001). Louisville has not made such a showing. Because businesses fail every day, the failure of Pillowtex in this case, even though it appeared to be highly commercially successful in 1998, is not an "exceptional or extraordinary circumstance." To say the least, Louisville took a calculated risk that did not turn out the way that it expected. Nor can we say that the equities in this case particularly favor Louisville and its fateful business decision. In the Pillowtex case, Louisville was faced with a summary judgment of noninfringement and an unfavorable claim construction with respect to the '322 patent. Its position looked bleak at that time. There was no certainty that Louisville could have had that result changed in the district court or on appeal if it did not enter into the settlement agreement. Thus, it was greatly to Louisville's benefit to settle the case under the terms that it did. Furthermore, we note that all of Louisville's claims directed to Pillowtex's accused mattress pads were dismissed pursuant to the settlement agreement except those relating to the 4059 mattress pad. Thus, Louisville salvaged significant benefit with respect to the 4059 mattress pad in reaching the settlement agreement. We therefore reject Louisville's request to nullify what it concedes was a bargained-for provision in the settlement agreement. The fact that there has been no appearance by Pillowtex in this appeal further weakens Louisville's argument to partially vacate the earlier judgment.

Moreover, although the district court did not issue an opinion articulating its basis for denying the motion, our review of the transcript of the hearing on the motion makes clear that the district court had a well-founded belief in the need for finality of the noninfringement judgment that it entered in 1998. As the Supreme Court has recognized, "[p]ublic policy dictates that there be an end of litigation; that those who

05-1595                                          7

have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc., 977 F.2d 558, 561 (Fed. Cir. 1992) (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981) (quoting Baldwin v. Traveling Men's Ass'n, 283 U.S. 522, 525 (1931))). This policy concern is even stronger when a case is ended by the deliberate choice of the parties. Id. (citing U.S. Steel Corp. v. Fraternal Ass'n of Steel Haulers, 601 F.2d 1269, 1274 (3d Cir. 1979)).

The district court in the Pillowtex case articulated that same policy concern when it made the following statement:

> [W]hen a Court's judgment is made as a result of a settlement . . . and it's not appealed and it's not reversed, and it's been in the books for a number of years, there is a thought that the state of the law should not be subjected to such later strategic, market-driven economic requests. . . . The integrity issue was whether court judgments can be relied upon or whether they are subject to being . . . tweaked later by a party who has no opponent.

Transcript of Record at 39-40, Louisville Bedding v. Pillowtex Corp., No. 3:94CV-722-S (W.D. Ky. Aug. 1, 2005). The court's policy concern provides sufficient basis for us to affirm its denial of Louisville's Rule 60(b)(6) motion.

We have considered Louisville's other arguments and have found them to be without merit.

## CONCLUSION

For the aforementioned reasons, the district court's decision denying Louisville's motion under Federal Rule of Civil Procedure 60(b)(6) was not an abuse of discretion and is hereby

## AFFIRMED.

05-1595                                        8