**GREENBRIER (Lake County Trust Company No. 1391), an Indiana General Partnership, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

Nos. 96–326C, 96–697C, 96–364, 96–435C.

United States Court of Federal Claims.

March 14, 2007.

---

Nancie G. Marzulla, Washington, D.C., for plaintiff. Roger J. Marzulla, of counsel.

Brian M. Simkin, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington D.C., with whom were Assistant Attorney General Peter D. Keisler, and David M. Cohen, Director, for defendant.

## OPINION

MEROW, Senior Judge.

### FACTS

Pursuant to RCFC 60(b)(6), the 249 individual plaintiffs comprising these four consolidated cases move for relief from the final judgment in this matter entered on April 14, 1998, which was affirmed by the United States Court of Appeals for the Federal Circuit. A writ of certiorari was denied by the Supreme Court of the United States. *Greenbrier v. United States,* 40 Fed.Cl. 689 (1998); *Greenbrier v. United States,* 193 F.3d 1348 (Fed.Cir.1999); *Greenbrier v. United States,* 530 U.S. 1274, 120 S.Ct. 2740, 147 L.Ed.2d 1005 (2000). The defendant opposes plaintiffs' motion.[1]

Plaintiffs in this litigation are low-income housing owners having 40–year government-insured mortgage loans requiring compliance with Department of Housing and Urban Development ("HUD") regulations as long as the insurance was in effect. The housing owner, in return for its lender's financing, promised the lender not to prepay its mortgage loan for at least 20 years without HUD approval. *Greenbrier,* 193 F.3d at 1353.

Concern that pre-payment of government-insured low income housing mortgage loans after 20 years would cause a decrease in the number of affordable housing units resulted in Congress enacting the Emergency Low Income Housing Preservation Act of 1987, Pub.L. No. 100–242, 101 Stat. 1877 (1987) (parts reprinted in 12 U.S.C. § 17151, note (1994)) ("ELIHPA") and the Low–Income Housing Preservation and Resident Home-ownership Act of 1990, Pub.L. 101–625, 104 Stat. 4249 (codified at 12 U.S.C. §§ 4101–4147 (1994)) ("LIHPRHA").

ELIHPA prohibited owners from prepaying mortgages absent HUD approval and authorized HUD to approve a prepayment only after making written findings that there would be minimal effects on existing tenants, the local low-income housing market in gen-

---

1. The briefs submitted by the parties are comprehensive. Oral argument was not considered necessary for the resolution of the motion presented.

eral and the local housing market for minorities. HUD was authorized to offer owners incentives to maintain the affordability restrictions on their properties. *Cienega Gardens v. United States,* 265 F.3d 1237, 1241 (Fed.Cir.2001).

LIHPRHA, which superceded ELIHPA in 1990, also prohibited owners from prepaying their mortgages after 20 years absent HUD approval and authorized HUD to provide incentives to owners to maintain the affordability restrictions on the properties. To approve prepayment, resulting in a termination of affordability restrictions, HUD was required to make findings such as that an increase in the monthly rental payment of a current tenant in any year would not exceed 10 percent. *Id.*

The Housing Opportunity Program Extension Act of 1996 ("HOPE"), Pub.L. No. 104–20, § 2, 110 Stat. 834 (March 28, 1996), authorized low-income housing owners to prepay their mortgage loans without prior approval by HUD, so long as the owner agreed not to raise rents for 60 days following the prepayment. *See CCA Assocs. v. United States,* 75 Fed.Cl. 170, 199 (2007).

Plaintiffs initiated this litigation in 1996 claiming that ELIHPA and LIHPRHA breached contracts they had with HUD or, alternatively, resulted in a taking of their property requiring compensation pursuant to the Fifth Amendment to the United States Constitution. During pretrial proceedings, representations by counsel that dispositive motions would be filed prompted the Order, filed March 7, 1997, denying class certification and detailing matters which should be briefed by counsel. (*See* Def.'s Opp'n Br., filed Dec. 22, 2006, App. at 1–10.) Of relevance to the present RCFC 60(b) motion, the March 7, 1997 Order stated at p. 6:

> If Plaintiffs did not avail themselves of the prepayment options available to them under ELIHPA and later LIHPRHA, are they barred from asserting a temporary takings claim under the reasoning of Riverside Bayview Homes? [*United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985).] Or, alternatively, should Plaintiffs who did not pursue prepayment be required to proffer evidence demonstrating that resort to the HUD prepayment process would have been futile as a prerequisite to consideration of a temporary taking claim?

In the dispositive motion process which followed, defendant asserted that plaintiffs failed to state a taking claim on which relief could be granted in the absence of any allegations that plaintiffs sought and were denied permission to prepay their mortgages. Defendant supported its motion with a Declaration of Joseph Malloy, dated May 3, 1997, (now reproduced as the Appendix 2 to Pls.' Mem., filed Jan. 12, 2007) which addressed a number of the issues raised in the Order of March 7, 1997. Mr. Malloy was then Deputy Director of the Existing Products/Preservation Division, Office of Multifamily Housing Development, HUD. Among other items, Mr. Malloy reported that: "7. None of the owner-participants listed on Attachment A sought to prepay their FHA-insured mortgage and terminate the low-income affordability restrictions applicable to their projects under ELIHPA or LIHPRHA." Mr. Malloy also reported that the HUD insurance programs "involve a total of 3,668 properties as of March 1, 1997 ..." and "[o]nly eight of these properties have sought to prepay their mortgages, ..." and "[o]f this limited number three have been permitted to prepay and withdraw." (Malloy Decl. 4.)

Plaintiffs' opposition to defendant's dispositive motion concerning their alternative taking claims took the position that "There are no Administrative Remedies to Exhaust and Plaintiffs Need Not Have Pursued Prepayment to Assert Their Claim." (Pls.' Opp'n 36, filed June 23, 1997.) Plaintiffs' Opposition was grounded on the assertion of "[C]ongress' abrogation of Plaintiffs' unfettered contractual right to withdraw their property from the government's Section 221(d)(3) and 236 programs *without HUD permission,*[31/] at the expiration of the twentieth year from final endorsement." *Id.*

Plaintiffs, in the cited footnote 31, stated, "[t]hus, even if this case would be viewed as involving a comparatively innocuous 'mere assertion of regulatory jurisdiction' creating a 'permit' system (*United States v. Riverside Bayview Homes,* 474 U.S. 121, 126–27, 106

S.Ct. 455, 88 L.Ed.2d 419 (1985)) there exists no possibility of receiving an adequate 'permit'—the contractual right to proceed without permission." *Id.* Plaintiffs relied generally upon the futility exception expressed in *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 350 n. 7, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986), to assert they were excused from making any prepayment applications, but did not set forth any proposed particularized evidence, showing even an issue for trial, for any individual plaintiff, that would, if sustained, warrant a determination that an application for prepayment under ELIHPA/LIHPRHA was futile.

In *Greenbrier*, 40 Fed.Cl. 689 (1998), summary judgment was granted in favor of the United States dismissing the consolidated complaints on the grounds that there were no relevant contractual agreements between the parties and, in the absence of prepayment applications under ELIHPA/LIHPRHA, the taking claims were not ripe for review. These determinations were upheld on appeal. *Greenbrier*, 193 F.3d 1348 (Fed. Cir.1999), *cert. denied*, 530 U.S. 1274, 120 S.Ct. 2740, 147 L.Ed.2d 1005 (2000).

The Federal Circuit's Opinion in *Greenbrier* relied upon its prior decision in *Cienega Gardens v. United States*, 162 F.3d 1123 (Fed.Cir.1998) concerning the lack of a relevant contractual agreement between the parties. In *Cienega*, the $3,061,107 breach of contract judgment in favor of the four "model plaintiffs," reached after a full damage trial, was reversed for lack of privity and the case remanded to the trial court for further proceedings. 162 F.3d at 1136. On remand, the trial court dismissed the alternative taking claims, finding the case controlled by the Federal Circuit's ruling in *Greenbrier*. This dismissal was appealed and the Federal Circuit then reversed, ruling that "[t]he trial court's findings during the damages trial of the breach of contract action, as well as the United States' own housing data, conclusively establish that HUD would have had no discretion under the statutory requirements of ELIHPA and LIHPRHA to permit the owners to prepay their mortgages, . . . ." *Cienega*, 265 F.3d 1237, 1239 (Fed.Cir.2001). *Green-*

*brier* was distinguished, the Court stating (*Id.* at 1248):

The four Model Plaintiffs in the present appeal, as opposed to the 249 owners in *Greenbrier*, have set forth uncontested facts demonstrating that it would be futile for them to file prepayment requests with HUD. Whereas our court in *Greenbrier* was required to determine the ripeness of the owners' claims without the aid of the facts of their particular circumstances, the four Model Plaintiffs have set forth a compelling case of administrative futility. Our conclusion that the takings claims of the four Model Plaintiffs are ripe is applicable only to the circumstances of the Model Plaintiffs and those other owners that demonstrate on a case-by-case basis in future proceedings that it would have been futile to submit prepayment requests to HUD. Under *Greenbrier*, we cannot hold that all forty-two of the Owners are entitled to proceed with their takings claims, as HUD may have discretion to grant some of the Owners' prepayment requests. On remand, the trial court will have to determine, under the applicable facts, whether each plaintiff has demonstrated that it would have been futile to apply to HUD for prepayment.

All subsequent decisions in this mortgage prepayment area, as to administrative futility, have been based upon findings derived from evidence submitted with respect to individual plaintiffs. *See, e.g., Cienega Gardens v. United States*, 67 Fed.Cl. 434, 460–62 (2005); *Royal Manor v. United States*, No. 98–778 C, — Fed.Cl. — (April 8, 2005) (denying motion to dismiss on assumption that plaintiff can prove its allegation "that prepaying its mortgage and exiting the program would cause tenants' rents to increase by more than ten percent.") (Slip. Op. at 11, as reproduced in Exhibit 1 to Pls.' Mem., filed Jan. 12, 2007); *City Line Joint Venture v. United States*, 71 Fed.Cl. 486, 490 (2006) ("[w]e base our conclusion regarding the futility of plaintiff's seeking to prepay its mortgage on the testimony of two witnesses."); *CCA Assocs. v. United States*, 75 Fed.Cl. 170, 182–187 (2007).

## DISCUSSION

Relief from a final judgment pursuant to RCFC 60(b)(6) requires a showing of exceptional or extraordinary circumstances. *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Louisville Bedding Co. v. Pillowtex Corp.,* 455 F.3d 1377, 1380 (Fed.Cir.2006).

The claimed exceptional or extraordinary circumstance on which plaintiffs ground their RCFC 60(b)(6) motion is the assertion that "Subsequent Decisions in Similar Cases Demonstrate That the Case Was Wrongly Decided." (Pls.' Mem. 8, filed Dec. 6, 2006.). *Cienega,* 265 F.3d 1237 (Fed.Cir.2001) and *Anaheim Gardens v. United States,* 444 F.3d 1309 (Fed.Cir.2006) are cited as demonstrating that *Greenbrier* was wrongly decided. However, the cited cases do not show that *Greenbrier* was wrongly decided.

In *Greenbrier,* plaintiffs essentially asserted an erroneous facial challenge with respect to the taking impact of the enactment of ELIHPA/LIHPRHA. Had a facial challenge been valid, the mere enactment of the restrictions on prepayment would be sufficient to make a claim ripe. *See Brubaker Amusement Co., Inc. v. United States,* 304 F.3d 1349, 1357 (Fed.Cir.2002). This facial approach was also consistent with Plaintiffs' Motion for Class Certification. Plaintiffs made no attempt to set forth separate facts for each plaintiff which would demonstrate the futility of a prepayment application. The *Greenbrier* decisions rejecting plaintiffs' facial challenge and class certification approach were upheld on appeal and the individualized "as applied" approach to resolving the prepayment taking claims, which was adopted in *Greenbrier,* has been applied in all subsequent cases. For example, as stated in *Cienega,* 265 F.3d at 1248:

> [u]nder *Greenbrier,* we cannot hold that all forty-two of the Owners are entitled to proceed with their takings claims, as HUD may have discretion to grant some of the Owner's prepayment requests. On remand, the trial court will have to determine, under the applicable facts, whether each plaintiff has demonstrated that it would have been futile to apply to HUD for prepayment.

The decision in *Greenbrier* continues to be favorably cited and can in no valid way be described as "wrongly decided." *See Morris v. United States,* 392 F.3d 1372, 1376 (Fed.Cir.2004); *Stearns Co. Ltd. v. United States,* 396 F.3d 1354, 1358 (Fed.Cir.2005). The exceptional or extraordinary circumstance required to justify RCFC 60(b)(6) relief does not encompass the impact of tactical litigation decisions that prove to be unsuccessful. *See Kaiser Alum. & Chem. Corp. v. United States,* 187 Ct.Cl. 443, 456–57, 409 F.2d 238, 245–46 (1969) (concurring opinion); *Lehman v. United States,* 154 F.3d 1010, 1017 (9th Cir.1998). If plaintiffs wished to obtain an individualized "as applied" decision as to the futility of a prepayment application, the group approach used in *Greenbrier* was counterproductive. This litigation approach proved to be wrongfully pursued rather than the opinions obtained by its use being "wrongfully decided" as now asserted. No viable reason for Rule 60(b)(6) relief has been shown. *See* 12 *Moore's Federal Practice,* § 60.48[3][a] (Matthew Bender 3d ed.).

Moreover, plaintiffs' motion for relief from the April 14, 1998 Judgment was not filed within a reasonable period of time as required by RCFC 60(b). The Federal Circuit's September 18, 2001 decision in *Cienega,* 265 F.3d at 1248, established the ripeness of the four model plaintiffs' taking claims and expressly stated the need for individual "as applied" factual determinations as to the futility of prepayment applications for each owner under ELIHPA/LIHPRHA. If individual determinations were then to be pursued by plaintiffs and Rule 60(b)(6) relief was considered to be needed in this regard, the time to file was promptly after the September 2001 ruling in *Cienega.*

This is made more evident by consideration of the statute of limitations. Congressional policy reflected in 28 U.S.C. § 2501, bars claims filed more than six years after first accrual. There is some dispute over the accrual date for temporary taking claims based on ELIHPA/LIHPRHA mortgage payment restrictions, which restrictions were lifted as a result of the March 28, 1996 enactment of HOPE. If one sets the accrual date at the end of the temporary taking

period, the earliest accrual date would be March 28, 1996, and 28 U.S.C. § 2501 would bar claims filed after March 28, 2002. *See Cienega,* 67 Fed.Cl. 434, 490 (2005); *CCA Assocs. v. United States,* 75 Fed.Cl. 170, 200, 205–06 (2007) (accrual at end of taking period); *but see City Line Joint Venture v. United States,* 71 Fed.Cl. 486, 497–98 (2006) (accrual on date plaintiff's right to prepayment was terminated). In *CCA Associates* it was noted that HUD did not promptly permit prepayments upon the enactment of HOPE, but did so after issuing Preservation Letter No. 97–1 on December 16, 1997. 75 Fed.Cl. at 179. Using a reasonable payment date of the end of December 1997, and adding the sixty-day holding period that was required under HOPE before rents could be raised, the accrual date for a temporary taking claim in *CCA Associates* was set at February 28, 1997. 75 Fed.Cl. at 200, 205–06. This would mean that claims filed after February 28, 2003 would be barred by 28 U.S.C. § 2501.[2]

Plaintiffs' RCFC 60(b)(6) motion was filed December 6, 2006, well beyond the expiration of any statute of limitation period for the asserted temporary taking involved and in the face of a clear opinion by the Federal Circuit in September of 2001 setting forth the requirements which plaintiffs now wish to address. *Cienega,* 265 F.3d at 1248. This does not comply with RCFC 60(b). *See Reynolds Metals Co. v. United States,* 194 Ct.Cl. 309, 316, 438 F.2d 983, 987 (1971).

## CONCLUSION

Because plaintiffs have not established that *Greenbrier* was "wrongly decided" which is the sole ground upon which their RCFC 60(b)(6) motion is premised and because, in any event, the motion was not filed within a reasonable period of time, it is **ORDERED**

2. It is recognized that owners who entered into use agreement under ELIHPA/LIHPRHA have been held to have extended claim accrual dates. *Cienega,* 67 Fed.Cl. at 482. Plaintiffs argue that entering into such an agreement "ripens the case, just as an application under the futile prepayment option would have[.]" (Pls.' Mem., filed January 12, 2007, at p. 11.) This conclusion is not supported by the cases cited. The issue litigated was whether entering into such an

that plaintiffs' motion, filed December 6, 2006, is **DENIED.**

agreement eliminated a taking claim, not whether it ripened one. *Id.* The prepayment restriction taking claims remained extant and the only effect of the use agreement was to extend their accrual date. The litigated findings as to futility of prepayment applications which were required in *Cienega* would not have been ordered and accomplished for those owners having use agreements, were plaintiffs' "ripeness" theory correct.