# United States Court of Appeals for the Federal Circuit

04-5029

ROBERT E. MORRIS and CAROL L. MORRIS,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

J. David Breemer, Pacific Legal Foundation, of Sacramento, California, argued for plaintiffs-appellants. With him on the brief was Robin L. Rivett.

Kathryn E. Kovacs, Attorney, Appellate Section, Environment and Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Thomas L. Sansonetti, Assistant Attorney General; Katherine J. Barton, Attorney, and William J. Shapiro, Attorney, General Litigation Section, of Washington, DC. Of counsel on the brief was Deanna Harwood, Attorney, Office of the General Counsel, National Oceanic and Atmospheric Administration, of Long Beach, California.

Appealed from: United States Court of Federal Claims

Senior Judge Bohdan A. Futey

# United States Court of Appeals for the Federal Circuit

04-5029

ROBERT E. MORRIS and CAROL L. MORRIS,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  December 16, 2004

_____

Before NEWMAN, CLEVENGER, and DYK, Circuit Judges.

CLEVENGER, Circuit Judge.

In this appeal, the Morrises challenge the decision of the United States Court of Federal Claims, which dismissed as unripe their claim that regulatory provisions of the Endangered Species Act effected a taking compensable under the Fifth Amendment. See Morris v. United States, 58 Fed. Cl. 95 (2003).  Because the agency has discretion over the cost to the Morrises of complying with the regulations, this claim is unripe and we therefore affirm the trial court's decision.

I

In 1995, the Morrises paid $2,500 to purchase a half-acre lot adjacent to the Eel River in Humboldt County, California.  Morris, 58 Fed. Cl. at 96.  They now seek to

harvest six large old-growth redwood trees that grow on that property and assert that this is the property's only economically viable use. Id. Potentially standing in their path is the Endangered Species Act ("the Act"), see 16 U.S.C. §§ 1531-1544 (2000). The Act prohibits the "take" of certain listed species, § 1538(a)(1)(B),[1] but empowers the Secretary to permit "any taking otherwise prohibited by section 1538(a)(1)(B) . . . if such taking is incidental to . . . an otherwise lawful activity." § 1539(a)(1)(B). To receive an Incidental Take Permit ("ITP"), a person wishing to engage in acts that might effect a "take" of a listed species must file an application that includes a Habitat Conservation Plan ("HCP"). See 16 U.S.C. § 1539(a)(2)(A)(i)-(iv); see also 50 C.F.R. § 222.307 (2004).

After being contacted by the Morrises, the National Marine Fisheries Service ("NMFS" or "the agency") visited the property to evaluate whether harvesting the trees would violate the Act by interfering with the behavior patterns of certain fish in the Eel River. 58 Fed. Cl. at 96. Through correspondence it became clear that the position of NMFS was that the Morrises should obtain an ITP before harvesting the trees. Id. The Morrises investigated the cost of filing an application with the required HCP. Concluding that the cost was greater than the value of the trees or the property, they decided not to file an application for an ITP. Instead, they brought suit against the

---

[1] In relevant part, the Act states:

(a)(1) Except as provided in sections 1535(g)(2) and 1539 of this title, with respect to any endangered species of fish or wildlife listed pursuant to section 1533 of this title it is unlawful for any person subject to the jurisdiction of the United States to . . .

    (B) take any such species within the United States or the territorial sea of the United States;

16 U.S.C. § 1538 (2000).

United States alleging a regulatory taking in the requirement that they comply with the permitting process.

The government moved to dismiss the claim on the pleadings, contending that it was unripe because the Morrises never applied for an ITP and, consequently, the government never took a final action restricting the use of the property. The Court of Federal Claims agreed, holding that the Morrises must at least make an application for an ITP before their claim can ripen. 58 Fed. Cl. at 99. The Morrises appeal.

Absent an express statutory grant of jurisdiction to the contrary, the Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000. See Palm Beach Isles Assocs. v. United States, 208 F.3d 1374, 1383 n.10 (Fed. Cir. 2000). However, that court does not have jurisdiction over claims that are not ripe. See Howard W. Heck & Assocs., Inc. v. United States, 134 F.3d 1468 (Fed. Cir. 1998). We review the jurisdictional determination of the Court of Federal Claims pursuant to 28 U.S.C. § 1295(a)(3) (2000). This court's review of the ripeness question is de novo. Heck, 134 F.3d at 1471.

II

According to the Morrises, their takings claim is ripe for review because the cost of the permitting process exceeds $10,000 and is greater than the value of their property, and the government has no meaningful discretion to change those facts. Thus, argue the Morrises, the agency has no further discretion to reduce the economic impact of the regulatory scheme and the effects of that scheme are known to a reasonable degree of certainty. The Morrises also conditionally challenge the Court of Federal Claims's decision on procedural grounds. They argue that if the Court of

Federal Claims dismissed their claim on the premise that their allegations of the cost of the permitting process were not accurate, the court erred because it is required to accept their factual allegations as true.

The government responds that the Morrises' claim is unripe because the Morrises have made no attempt to use the available permitting procedure. It argues that there has been no agency decision impacting the property in question and that the futility exception extant in the law applies only where the agency's conduct operates as a constructive denial of a permit, not where the permitting process is merely complex, arduous, or expensive. Concerning the Morrises' procedural argument, the government argues that the condition has not been met because the Morrises' claim was dismissed for not filing any application, not because the court disbelieved the Morrises' allegations concerning the cost of the application. Addressing the alternative, the government argues that even if the Court of Federal Claims had decided the case on the grounds the Morrises suggest, such a decision is proper because a court addressing a challenge to subject matter jurisdiction in a dispositive motion is not bound to accept all of the allegations in the complaint as true and can look beyond the pleadings to determine whether it has jurisdiction.

III

The Morrises' theory of taking is not grounded in any agency restriction of the actual use of their property, but on their obligation to apply for and secure a permit before harvesting the trees. That is to say, the agency has not told the Morrises that they either may or may not harvest the trees they seek to harvest, and if they may, what conditions might apply to such permission. Instead, to be confident that they comply

with the take prohibitions of the Act, the Morrises must file an application, which, accepting their assertion of the relevant costs, will cost more than their property is worth. Thus, it is the burdens attending the administrative procedure rather than the burdens attending a decision on restriction of use that define the Morrises' claim.

We have no comment on whether a regulatory taking can arise in these circumstances. However, the Morrises' theory of taking directs the ripeness inquiry. Under the Morrises' theory, ripeness depends not on a final agency decision pertaining to the actual use of their property, but, instead, on a final agency decision establishing the cost of the application process.

The general rule is that a claim for a regulatory taking "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1349 (Fed. Cir. 2002) ("[A]bsent denial of the permit, only an extraordinary delay in the permitting process can give rise to a compensable taking."). This "finality" requirement is compelled by the nature of the takings inquiry. Evaluating whether the regulations effect a taking requires knowing to a reasonable degree of certainty what limitations the agency will, pursuant to regulations, place on the property. See MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 350-51 (1986). This means that when an agency provides procedures for obtaining a final decision, a takings claim is unlikely to be ripe until the property owner complies with those procedures. See Greenbriar v. United States, 193 F.3d 1348, 1359 (Fed. Cir. 1999).

04-5029                                    5

Where further administrative process could reasonably result in a more definite statement of the impact of the regulation, the property owner is generally required to pursue that avenue of relief before bringing a takings claim.  See id. ("The failure to follow all applicable administrative procedures can only be excused in the limited circumstance in which the administrative entity has no discretion regarding the regulation's applicability and its only option is enforcement.").  Indeed, in Heck we went so far as to state:  "the futility exception simply serves 'to protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved.'" 134 F.3d at 1472 (quoting S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 504 (9th Cir. 1990)).  Thus, where the agency's decision makes clear that pursuing remaining administrative remedies will not result in a different outcome, the remaining remedies are futile and the impact of the regulation on the use of the property is reasonably certain.  See Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 739 (1997).

IV

Here the Morrises' claim is not ripe because there has been no final agency decision that has sufficiently fixed the cost of the application.  Even accepting that the Morrises must file an application to harvest their trees, the agency has discretion to assist the Morrises with the application.  Because we have no idea and no way to predict what influence the wielding of that discretion will have on the cost of the application to the Morrises, this case cannot be ripe, see Greenbriar, 193 F.3d at 1359 (citing Suitum, 520 U.S. at 738-40), and we thus cannot reach the Morrises' novel theory that a compensable taking can arise from the cost of complying with a valid

regulatory process where the government has never actually restricted the use of the property in question.

The assumption that the cost of applying for the ITP is fixed and knowable is simply incorrect. The statute requires that an ITP applicant submit an HCP.[2] Notably, however, the Habitat Conservation Planning and Incidental Take Permit Processing Handbook, (Nov. 4, 1996) ("Handbook"), which guides NMFS in processing ITP applications, explains that NMFS is to provide assistance to an ITP applicant. It "strongly recommend[s]" that an applicant request technical assistance from NMFS and further states that the NMFS Field Office is "to provide[] technical assistance to the permit applicant." We also note that the Handbook makes the Field Office "responsible for assisting the applicant in preparing the HCP" and contemplates an involved role for NMFS throughout the process. This is consistent with the agency's position in this litigation and consistent with the estimate provided by the appellants' consultant, which reflects that NMFS offered to prepare the National Environmental Policy Act

_____

[2] (2)(A) No permit may be issued by the Secretary authorizing any taking referred to in paragraph (1)(B) unless the applicant therefor submits to the Secretary a conservation plan that specifies—

    (i) the impact which will likely result from such taking;

    (ii) what steps the applicant will take to minimize and mitigate such impacts, and the funding that will be available to implement such steps;

    (iii) what alternative actions to such taking the applicant considered and the reasons why such alternatives are not being utilized; and

    (iv) such other measures that the Secretary may require as being necessary or appropriate for purposes of the plan.

16 U.S.C § 1539 (2000).

04-5029                    7

Assessment and committed to providing technical assistance for the design of mitigation or conservation measures. Moreover, at argument, Appellants' counsel candidly conceded that the agency has discretion concerning what the Morrises must do to complete a satisfactory HCP.

The cost of an ITP application is unknowable until the agency has had some meaningful opportunity to exercise its discretion to assist in the process. Because the cost to the Morrises of the ITP application following the exercise of NMFS's discretion may be less than the alleged economic value of their property, deciding whether a taking would occur if the cost is greater is a hypothetical exercise. It is no more than asking the court to advise whether a taking will occur if the agency were to exercise its discretion in a particular manner. To allow a claim to ripen on the assertion that the exercise of an agency's discretion would have a certain result, without permitting the agency to exercise that discretion would offend the requirement from Abbott Laboratories v. Gardner, 387 U.S. 136, 149 (1967), that the issue be fit for review. Accordingly, in its current posture, the Morrises' claim cannot ripen until the agency refuses to exercise its discretion, or exercises its discretion in a manner that makes reasonably clear or final the affect the regulation will have on the Morrises' application. See Palazzolo v. Rhode Island, 533 U.S. 606, 620-21 (2001).

V

Because the Morrises have not allowed NMFS to exercise its discretion, their claim is not ripe as a matter of law. Accordingly, this claim is not ripe until the Morrises make a meaningful attempt to engage NMFS by filing an application and requesting assistance. In addition, because the Court of Federal Claims correctly dismissed this

04-5029                                    8

claim as a matter of law, the Morrises' procedural arguments do not establish reversible error.

The decision of the Court of Federal Claims to dismiss the complaint is affirmed.

<u>COSTS</u>

No costs.

<u>AFFIRMED</u>