# United States Court of Appeals for the Federal Circuit

---

**BARLOW & HAUN, INC., A WYOMING CORPORATION, TRICONTINENTAL RESOURCES, A WYOMING PARTNERSHIP, NOWIO-S, LLC, A WYOMING LIMITED LIABILITY COMPANY, NOWIO-V, LLC, A WYOMING LIMITED LIABILITY COMPANY,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2015-5028

---

Appeal from the United States Court of Federal Claims in No. 1:08-cv-00847-MMS, Judge Margaret M. Sweeney.

---

Decided: October 9, 2015

---

DRAKE D. HILL, The Hill Law Firm, Cheyenne, WY, argued for plaintiffs-appellants. Also represented by THOMAS FRANK REESE, Williams, Porter, Day & Neville, Casper, WY.

ERIKA KRANZ, Environment and Natural Resources Division, United States Department of Justice, Washing-

ton, DC, argued for defendant-appellee. Also represented by KATHERINE J. BARTON, JOHN C. CRUDEN.

---

Before LOURIE, BRYSON, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Barlow & Haun, Inc. ("Barlow"), TriContinental Resources ("TriContinental"), NOWIO-S, LLC ("NOWIO-S"), and NOWIO-V, LLC ("NOWIO-V") (collectively, "Appellants") appeal the judgment of the United States Court of Federal Claims dismissing: (1) Barlow's breach of contract claim on the merits, (2) Barlow's takings claim as unripe, and (3) TriContinental's, NOWIO-S's, and NOWIO-V's breach of contract claim for lack of standing. *Barlow & Haun, Inc. v. United States*, 118 Fed. Cl. 597, 623 (2014). Because the trial court made no legal error or clearly erroneous factual finding, we affirm.

## BACKGROUND

In the mineral-rich state of Wyoming, a conflict between oil and gas development and trona[1] mining on public lands has developed over the last twenty years. Given the risks posed by oil and gas development to the extraction of trona and trona worker safety, the Bureau of Land Management ("BLM"), which manages the leasing of federal public land for mineral development, indefinitely suspended all oil and gas leases in one area of Wyoming, known as the mechanically mineable trona area or "MMTA." At issue in this case is the effect of this indefinite suspension on twenty six pre-existing oil and gas leases owned by Barlow in the MMTA.

---

[1] Trona is a sodium carbonate compound that is processed into soda ash or baking soda.

As the custodian of federal lands, the BLM is authorized to award oil and gas leases, approve applications for a permit to drill ("APD"), and develop land use plans. The Mineral Leasing Act authorizes the Secretary of the Interior to manage the leasing of public lands for developing deposits of coal, natural gas, oil, sodium phosphates, and other minerals. *See generally* 30 U.S.C. §§ 181–287 (2012); 43 U.S.C. §§ 1701–1787 (2012); 43 C.F.R. § 3160.0-3 (2013) (implementing regulations).

Barlow filed suit against the government in November 2008, alleging that the BLM's suspension of oil and gas leases constituted a taking of Barlow's interests in the twenty six leases without just compensation in violation of the Fifth Amendment (count I of the complaint). Barlow further alleged that the BLM's suspension constituted a breach of both the express provisions of the leases and their implied covenants of good faith and fair dealing (count II of the complaint). After the close of discovery, both sides moved for summary judgment.[2] The Court of Federal Claims denied both sides' motions, finding that there was a factual dispute as to the duration of the suspensions. The case proceeded to trial on April 15-30 and September 16-17, 2013. The parties filed post-trial briefing and the trial court issued its post-trial opinion on September 26, 2014.

---

[2] Appellants filed a partial summary judgment motion on the issue of the government's liability for breach of the leases, and the government filed a motion on Appellants' claims for breach of contract and a taking without just compensation. Order Denying Plaintiffs' Motion for Partial Summary Judgment and Defendant's Cross-Motion for Summary Judgment, *Barlow & Haun, Inc. v. United States*, No. 1:08-cv-00847 (Fed. Cl. Aug. 22, 2012), ECF No. 105.

In its post-trial opinion, the Court of Federal Claims concluded that Barlow's breach of contract claim failed on the merits, that Barlow's takings claim was unripe, and that three of the four Appellants—TriContinental, NOWIO-S, and NOWIO-V—lacked standing to assert a claim for breach of contract.[3] The court found that Barlow's breach of contract claim failed because the BLM had not repudiated the contract. Barlow argued that the BLM breached the leases by eliminating its right under the leases to explore for and produce oil and gas, and by imposing new conditions on the leases, such as accommodating the concerns of the trona industry and ensuring the safety of underground trona miners, which were not contemplated at the time the leases were executed. The court found, however, that the BLM's statements about the cessation of oil and gas development in the trona conflict area did not foreclose the possibility that Barlow could still be approved to drill there, because the BLM repeatedly stated that it would recognize valid existing rights. Additionally, the court concluded that the allegedly "new" provisions were already encompassed by existing lease provisions. Therefore, the court found that any requirement that the BLM consider the impact of oil and gas drilling on trona mining and miners in an APD would not constitute a repudiation of the lease. Accordingly, the court rejected Barlow's claim for breach of contract.

The Court of Federal Claims next determined that Barlow's takings claim was not ripe because Barlow had not submitted an APD to the BLM. *Barlow*, 118 Fed. Cl. at 618-619. Although Barlow argued that filing an APD would have been futile, the court disagreed, finding that,

---

[3]    In this opinion, the Court of Federal Claims also rejected the government's argument that Appellants' claims accrued beyond the applicable limitations period. The parties did not appeal this finding.

in light of the BLM's statements that it would recognize rights in preexisting leases, the BLM "retained the discretion to allow oil and gas development in appropriate circumstances." *Id.* Accordingly, the court found that the takings claim was not ripe.

Finally, the Court of Federal Claims determined that three of the four plaintiffs—TriContinental, NOWIO-S, and NOWIO-V—did not have standing to pursue a breach of contract claim because they were not in privity of contract with the government. *Id.* at 619-20. The court noted that there was no evidence presented at trial indicating that these parties had any contractual agreement with the government. Instead, the evidence of record showed that only Barlow had title in the leases. Thus, the court dismissed the claims of TriContinental, NOWIO-S, and NOWIO-V for lack of standing.

The court then entered final judgment in favor of the government. Appellants filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

STANDARD OF REVIEW

We review legal conclusions of the Court of Federal Claims without deference, but defer to factual findings unless clearly erroneous. *Kansas Gas & Elec. Co. v. United States*, 685 F.3d 1361, 1366 (Fed. Cir. 2012). A factual finding is clearly erroneous when we are "left with a definite and firm conviction that a mistake has been committed." *Id.*

Contract interpretation is a question of law that we review without deference. *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1271 (Fed. Cir. 2008). Similarly, we review the Court of Federal Claims's determination with respect to ripeness de novo. *McGuire v. United States*, 707 F.3d 1351, 1357 (Fed. Cir. 2013).

Whether a taking has occurred is a question of law based on factual underpinnings. *Wyatt v. United States*,

271 F.3d 1090, 1096 (Fed. Cir. 2001). A trial court's determination that a takings claim is not ripe for adjudication is an issue we review de novo. *Morris v. United States*, 392 F.3d 1372, 1375 (Fed. Cir. 2004).

We review de novo a determination of a party's standing, while reviewing any factual findings relevant to that determination for clear error. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs.*, 776 F.3d 837, 842 (Fed. Cir. 2015).

DISCUSSION

Appellants argue that the BLM breached Barlow's oil and gas leases; that the BLM's regulations restricting oil and gas mining constituted a taking; and that TriContinental's, NOWIO-S's, and NOWIO-V's breach of contract claim was improperly dismissed for lack of standing. We discuss each of these arguments in turn.

A. Breach of Contract

Barlow argues that the BLM breached the oil and gas leases in two ways: (1) by indefinitely suspending the leases, the BLM barred Barlow's right to utilize its leases for their only purpose, namely, oil and gas development; and (2) by imposing new conditions not contemplated at the time of contracting, the BLM unilaterally altered the terms of the contract and denied Barlow the benefit of its bargain. For the reasons below, we find these arguments to be without merit.

"When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *Mobil Oil Exploration & Producing Southeast v. United States*, 530 U.S. 604, 607 (2000) (quotation omitted). Such rights include a party's entitlement "to restitution for any benefit that he has conferred on" the other party if that party repudiates the contract. *Id.* (quoting Restatement (Second) of Contracts § 373 (1979)). A party

repudiates a contract by a "statement . . . indicating that [he] will commit a breach that would of itself give the [non-repudiating party] a claim for damages for total breach." *Id.* (quotation omitted). "Repudiation occurs when one party refuses to perform and communicates that refusal distinctly and unqualifiedly to the other party." *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1344 (Fed. Cir. 2000). And, total breach is a breach that "so substantially impairs the value of the contract to the injured party at the time of the breach that it is just in the circumstances to allow him to recover damages based on all his remaining rights to performance." *Mobil Oil*, 530 U.S. at 608 (quotation omitted).

The BLM can create resource management plans to define how a particular piece of land will be managed in the future. 43 C.F.R. § 1601.0-2 (2012). Such plans are implemented via a multi-step process, which includes preparing a draft plan and environmental impact statement ("EIS"), receiving comments on the draft plan, publishing the proposed resource management plan, resolving any protests of the proposed plan, and approving the proposed plan. 43 C.F.R. §§ 1610.4-1610.5. Once these management plans have been approved, they can be amended, but the amendment process must include the preparation of an environmental assessment or impact report. 43 C.F.R. § 1610.5-5.

The BLM created three versions of resource management plans relevant here: the 2007 draft resource management plan ("the 2007 Draft RMP"), the 2008 proposed resource management plan ("the 2008 Draft RMP"), and the 2010 final resource management plan ("the 2010 Final RMP"). As set forth below, a review of the language in the management plans makes clear that the BLM understood its obligation to honor its commitments under the pre-existing leases in the MMTA. Therefore, we reject Barlow's argument that the BLM repudiated its contracts.

The 2007 Draft RMP indicated the BLM's intent to recognize existing contracts, stating that "[t]he BLM must, by law, recognize all valid existing rights." *Barlow*, 118 Fed. Cl. at 609. The 2007 Draft RMP noted that "[t]he preferred course of action is to administer the area exclusively for trona extraction until conventional trona mining is complete." *Id.* at 609-610. In addition, the Draft 2007 RMP indicated that "an area has been designated, the MMTA, in which oil and gas leasing and development are currently prohibited." *Id.* The Draft 2007 RMP noted, however, that "[n]o formal decision has yet been made on the management of the oil and gas and trona resources within the MMTA boundary." *Id.* In sum, the 2007 Draft RMP evidenced the BLM's intent to honor Barlow's existing rights, and noted that the BLM's decision with respect to trona management and oil and gas management was not a final decision. *Id.*

The BLM again noted in the 2008 Draft RMP that it "must, by law, recognize all valid existing rights." *Barlow*, 118 Fed. Cl. at 610. The 2008 Draft RMP recognized that "[w]hen an oil and gas lease is issued, it constitutes a valid existing right; BLM cannot unilaterally change the terms and conditions of the lease." *Id.* The 2008 Draft RMP further clarified that "[e]xisting leases would not be affected by decisions resulting from this RMP." *Id.*

The 2010 Final RMP reaffirmed that "[t]he revised RMP will recognize valid existing rights." *Barlow*, 118 Fed. Cl. at 611. In addition, the 2010 Final RMP specified that "[t]he MMTA is administratively unavailable for *new* fluid mineral leasing until the oil and gas resources can be recovered without compromising the safety of underground miners." *Id.* (emphasis added). Thus, the 2010 Final RMP indicates that the BLM does not intend to breach existing contracts.

It is evident from the language of the drafts and the enacted resource management plan that the BLM under-

stood its obligation to accommodate the preexisting leases in the MMTA. Barlow is correct that some of the language in the draft RMPs indicated that oil and gas leasing and development would be prohibited. In the 2010 Final RMP, however, the BLM clearly makes a distinction between new leasing and preexisting leases.

In addition, the trial testimony indicated that the BLM would still consider an APD, even though it had suspended oil and gas development generally in the MMTA. *Barlow*, 118 Fed. Cl. at 611. The Court of Federal Claims credited this testimony, *see id.*, and we defer to these factual findings. Further, there was evidence that the BLM had granted other APDs in similar circumstances to another company, Saurus Resources, Inc. ("Saurus"). *Id.* at 607-09. Though Saurus applied for APDs while oil and gas development was suspended, the BLM ultimately approved Saurus's APDs, lifting of the suspension for those sites covered by Saurus's APDs. *Id.* Because the BLM stated unequivocally in the final EIS and the 2010 RMP that existing contractual rights would be recognized, and because it retains the discretion to approve APDs within the MMTA after the issuance of those documents, the final EIS and RMP cannot constitute a "distinct[] and unqualified[]" refusal to perform. *Dow Chem.*, 226 F.3d at 1344. Accordingly, the trial court properly determined that the BLM's decisions and statements regarding drilling in the MMTA did not constitute repudiation of the contract by the government.

We next consider Barlow's argument that the BLM breached the contract because it improperly altered the terms of the contract. In making this argument, Barlow relies heavily on *Mobil Oil* and the case upon which it relies, *Conoco, Inc. v. United States*, 35 Fed. Cl. 309, 331 (1996).

In this lineage of cases, two oil companies had lease contracts affording them the right to explore for and

develop oil off of the North Carolina coast. *Mobil Oil*, 530 U.S. at 607. These contracts included several provisions, including one that required the Department of the Interior ("Interior") to approve a company's plan for exploration within 30 days of its submission. *Id*. at 610. Pursuant to their contracts, the companies in *Mobil Oil* submitted their final exploration plans to Interior. After the parties entered into their leases with the government, but two days prior to the submissions of their final exploration plans, Congress passed a new law that prohibited the Secretary of the Interior from approving any Exploration Plan or Development and Production Plan. *Id*. at 611. The Department of the Interior decided to suspend the leases. *Id*. at 615.

The Supreme Court held that the Department of the Interior could not suspend the leases, because there was no basis for this type of suspension in the regulations. *Mobil Oil*, 530 U.S. at 615-618. And the government could not rely upon the new statute to justify the suspension, since the statute was passed after the leases were entered. *Id*. at 616. Accordingly, the Supreme Court found that, under the law in effect when the leases were signed, the government exceeded its authority in suspending the leases. *Id.*

Here, Barlow argues that the BLM's regulations imposed new provisions regarding trona miner safety not contemplated by the leases. We disagree. Contrary to Barlow's argument, the BLM had authority to regulate the safety of trona miners under the regulations that were in effect when the leases began. For example, 43 C.F.R. § 3162.1(a) provides that lease operators must conduct all operations "in a manner which . . . protects life and property." Additionally, 43 C.F.R. § 3162.5-2(a) states that a lease operator "shall utilize and maintain materials and equipment necessary to insure the safety of operating conditions and procedures." Barlow responds that the

regulations must specifically reference a particular mineral (here trona), and must explicitly list other worker safety, in order for leases incorporating these regulations to extend to trona miner worker safety. Barlow failed to cite any case law in support of its position that such specificity is required in the BLM's regulations. Barlow's argument is also contradicted by the language of the regulations, which expressly mention safety and the protection of life and property. Accordingly, we hold that the government did not breach the contract by imposing conditions that protect worker safety.

## B. Ripeness

Barlow also disputes the trial court's dismissal of its takings claim for lack of ripeness. Barlow argues that implementation of the BLM's regulations, which ended all oil and gas development until trona mining was completed, constituted a taking. Finding that Barlow's takings claim was not ripe, the Court of Federal Claims declined to reach the merits of this claim. Specifically, the trial court found that Barlow was required to apply for an APD after the final resource management plan had been approved, but that Barlow failed to do so. The court further found that filing such an application would not have been futile. Barlow disputes these findings.

Barlow argues that any APD application would have been futile because the resource management plans made clear the BLM's intent to suspend oil and gas leases in the MMTA. Barlow further argues that the BLM cannot contradict the resource management plans and the final EIS, which prohibited oil and gas drilling. Therefore, Barlow contends, there could be no doubt that the BLM would reject any APD application.

The BLM asserts that the Court of Federal Claims correctly dismissed Barlow's takings claim. The BLM reasons that, since there was no final decision denying

Barlow's ability to develop the leases, Barlow's takings claim is not ripe.[4]  The BLM also argues that Barlow's argument regarding the futility of any APD application fails because the BLM has discretion to grant or deny any APD application.

The Fifth Amendment to the United States Constitution states that private property shall not "be taken for public use without just compensation."   U.S. CONST. amend. V.  A takings claim can be premised on a regulation "that deprives land of all economically beneficial use." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014–15 (1992); *Good v. United States*, 189 F.3d 1355, 1360 (Fed. Cir. 1999).

"A claimant can show its claim was ripe with sufficient evidence of the futility of further pursuit of a permit through the administrative process." *Anaheim Gardens v. United States*, 444 F.3d 1309, 1315 (Fed. Cir. 2006) (citing *MacDonald v. City of Yolo*, 477 U.S. 340, 350 n. 7 (1986)). To determine if a takings claim is ripe, a court must determine whether a party has obtained a final decision from the reviewing agency, or whether the final decision was unnecessary due to lack of discretion on the agency's part.  *Palazzolo v. Rhode Island*, 533 U.S. 606, 618–20 (2001) ("While a landowner must give a land-use authority an opportunity to exercise its discretion, once it becomes clear that the agency lacks the discretion to permit any development, or the permissible uses of the property

---

[4]     In the alternative, the BLM argues that Barlow's contract based rights cannot give rise to a takings claim because the government acted within the framework of the contract.  The Court of Federal Claims did not reach this argument.  Because we find that Barlow's takings claim is not ripe, we likewise decline to address this argument.

are known to a reasonable degree of certainty, a takings claim is likely to have ripened.").

"The general rule is that a claim for a regulatory taking 'is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" *Morris v. United States*, 392 F.3d 1372, 1376 (Fed. Cir. 2004); *see also Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 190-91 (1985) (holding that the agency must have "arrived at a *final, definitive position* regarding how it will apply the regulations at issue to the particular land in question.") (emphasis added). Furthermore, a party must have first "followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion" so that the extent of the restriction on the property is known. *Palazzolo*, 533 U.S. at 620-21. We have recognized that "[t]he mere fact that an adverse decision may have been likely does not excuse a party from a statutory or regulatory requirement that it exhaust administrative remedies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). "The failure to follow all applicable administrative procedures can [] be excused in the limited circumstance in which the administrative entity has no discretion regarding the regulation's applicability and its only option is enforcement," however. *Greenbrier v. United States*, 193 F.3d 1348, 1359 (Fed. Cir. 1999); *see Anaheim Gardens*, 444 F.3d at 1316. Thus, the "[r]ipeness doctrine does not require a landowner to submit applications for their own sake." *Palazzolo*, 533 U.S. at 622.

Here, Barlow's takings claim is not ripe because there has not been a final decision from the BLM. Barlow relies heavily on *Washoe County v. United States*, 319 F.3d 1320 (Fed. Cir. 2003) to argue that the BLM's indefinite suspension constitutes a final decision. In *Washoe,* the

appellants had submitted to the Department of Interior a right-of-way permit for a water pipeline to cross federal lands. *Id.* at 1323. Before it could approve the permit, BLM had to complete an EIS and distribute it for comment. It was during this process that the Secretary of the Interior ordered the BLM to suspend its work on the EIS until issues with the Army, an Indian Tribe, and the U.S. Geological Survey could be resolved. *Id.* Since these issues were never resolved, the *Washoe* appellants were prevented from proceeding with their pipeline. While the government alleged that the *Washoe* appellants' takings claim was not ripe because there was no final decision to grant or deny the application for a right-of-way permit, this court disagreed. *Id.* at 1324. Specifically, we found that "there was no further reasonable and necessary step Washoe County could have taken to allow the BLM an opportunity to exercise its full discretion in acting upon Washoe County's permit application." *Id.* (internal quotations omitted).

Barlow further argues that filing an APD here would have been futile because the BLM does not have the discretion to approve an APD in light of the 2010 final resource management plan and the final EIS. We disagree. Unlike the appellant in *Washoe*, Barlow still had the opportunity to file an APD with the BLM, and the BLM had discretion to permit or deny the APD. The testimony at trial supports the BLM's contention that it had discretion to decide whether to approve an APD even after the suspension of oil and gas lease and development. *See Barlow*, 118 Fed. Cl. at 611-12. In particular, the testimony indicated that the BLM could still consider an APD even if the leases were currently suspended. *Id.* The BLM's resource management plans also reflect this discretion. *Id.* at 621 ("The revised RMP will recognize valid existing rights."); *id.* ("Existing leases would not be affected by decisions resulting from this RMP that desig-

nate areas administratively unavailable for oil and gas leasing."). The fact that the BLM actually approved APDs for Saurus during the early 2000s, when oil and gas leases were suspended, further supports the trial court's finding that BLM did have discretion to grant APDs. *See id.* at 607-09. Accordingly, we find that the trial court did not err when it concluded that Barlow's takings claim was not ripe. *See Palazzolo*, 533 U.S. at 620-21.

We also find that Barlow failed to demonstrate that the BLM made a decision with respect to its specific property rights, as is required to establish a takings claim. *See id.* Here, the BLM had established a well-defined administrative process, which Barlow elected not to engage in. The BLM could not make a property-specific decision here because Barlow never submitted an APD to develop any of the leases. For example, had Barlow submitted an APD, the BLM could have determined whether the proposed drilling site could avoid interaction with a trona mine. Since the BLM has discretion to evaluate each APD according to its individual merits, Barlow could not have known how the agency would apply the regulations to an APD. The trial court did not err in concluding that the BLM did not have an opportunity to make a specific determination with respect to Barlow's rights. While Barlow may be correct that the likelihood that its APD would be approved is not high, we cannot say it would have been futile for Barlow to submit an APD in the first instance. We accordingly affirm the trial court's dismissal of Barlow's takings claim for lack of ripeness.

## C. Standing

The Court of Federal Claims determined that Barlow failed to establish standing for three of the four plaintiff

parties—TriContinental, NOWIO-S, and NOWIO-V.[5] Appellants dispute this dismissal, arguing that because these entities have operating rights in the leases, they should be joined to this action under Fed. R. Civ. P. 19(a)(1)(B).

In order to maintain a claim for breach of contract, a party must be in privity with the United States. *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998). In contesting the parties' dismissal, Appellants cite to testimony that discusses the types of rights held by the three dismissed parties. Contrary to Appellants' assertions, however, the cited testimony does not demonstrate that these parties had a contractual relationship with the government.

After considering the parties' testimony, the Court of Federal Claims found that there was no evidence that NOWIO-S and NOWIO-V had ever entered into a contractual relationship with the United States. *Barlow*, 118 Fed. Cl. at 620. The trial court next found that TriContinental had no privity of contract with the United States since June 1, 2000, well before the alleged breach of contract occurred here. *Id.* The court thus determined that the cited testimony merely demonstrates that these parties had operating rights, not that they were in privity with the government. *Id.* at 608 n.12. We see no error in

---

[5]  The Court of Federal Claims dismissed *sua sponte* the claims of TriContinental, NOWIO-S, and NOWIO-V. The court can examine standing at all stages of the litigation, and if it determines that it lacks subject-matter jurisdiction over a claim at any time, it must dismiss the claim. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-31 (1990); *Pandrol USA, LP v. Airboss Ry. Prods.*, 320 F.3d 1354, 1367 (Fed. Cir. 2003). Thus, the trial court did not exceed its authority in dismissing the claims *sua sponte*.

the trial court's findings.  Accordingly, we affirm the dismissal of TriContinental's, NOWIO-S's, and NOWIO-V's breach of contract claim.

## CONCLUSION

We find no reversible error in the trial court's conclusions that (1) Barlow's claim for breach of contract fails on the merits; (2) Barlow's takings claim is unripe, and (3) TriContinental's, NOWIO-S's, and NOWIO-V's breach of contract claim fails for lack of standing.  Accordingly, we affirm.

**AFFIRMED**