NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JAMES DOYLE, DBA ROCKY MOUNTAIN VENTURES, DBA ENVIRONMENTAL LAND TECHNOLOGIES, LTD.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2023-1735

---

Appeal from the United States Court of Federal Claims in No. 1:22-cv-00499-DAT, Judge David A. Tapp.

---

Decided: December 18, 2024

---

ROGER J. MARZULLA, Marzulla Law, LLC, Washington, DC, argued for plaintiff-appellant. Also represented by NANCIE GAIL MARZULLA.

CHRISTOPHER ANDERSON, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by TODD KIM.

---

Before LOURIE, STOLL, and STARK, *Circuit Judges*.

STARK, *Circuit Judge*.

James Doyle owns land in an area in Utah that the United States Fish and Wildlife Service ("FWS") has designated as critical habitat for the Mojave desert tortoise. After years of failed efforts to obtain a permit necessary to allow him to develop his land, Mr. Doyle sued the federal government, contending that his property had been subject to a taking under the Fifth Amendment. The Court of Federal Claims found his claim was not ripe and dismissed his complaint. We affirm.

## I

## A

The Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-44, "provide[s] a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). The ESA generally prohibits what it calls the "take" of an endangered species, defining a "take" as "to harass, *harm*, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19) (emphasis added); *see also id.* § 1538(a)(1)(B) (prohibiting taking). Under regulations promulgated by FWS to implement the ESA, "harm" "may include significant habitat modification or degradation" injuring an endangered species. 50 C.F.R. § 17.3.

FWS is an agency within the Department of the Interior ("Interior"). The ESA authorizes the Secretary of the Interior ("Secretary") to issue "Incidental Take Permits," which allow, as relevant here, a taking "if such taking is incidental to, and not the purpose of, the carrying out of an otherwise lawful activity." 16 U.S.C. § 1539(a)(1)(B). The ESA sets out specific submissions that must be made by an applicant for an Incidental Take Permit and findings the

Secretary must make.  16 U.S.C. § 1539(a)(2)(A) & (B).
When these conditions are satisfied, an applicant becomes
entitled to issuance of such a permit.

Among other things, an applicant for a permit is re-
quired to specify "the impact which will likely result from
such taking," 16 U.S.C. § 1539(a)(2)(A)(i), by submitting a
conservation plan detailing how the specific actions that
would be allowed by the Incidental Take Permit will impact
identified endangered species, *see* 50 C.F.R. § 17.32(b)(1)
(describing contents of conservation plan, including impact
of proposed activity, steps to be taken to minimize and mit-
igate effects of that activity, and alternatives to activity ap-
plicant considered).  The required conservation plan is
commonly referred to as a "habitat conservation plan"
("HCP").  *See, e.g.*, *Loggerhead Turtle v. Cnty. Council of
Volusia Cnty.*, 148 F.3d 1231, 1238 (11th Cir. 1998) ("As a
prerequisite to receiving an incidental take permit, the ap-
plicant must submit a habitat conservation plan.").  If the
Secretary finds that the conditions identified in
§ 1539(a)(2)(B) are satisfied, the ESA directs that "the Sec-
retary *shall* issue the permit."  16 U.S.C. § 1539(a)(2)(B)
(emphasis added).

B

In 1990, FWS categorized the Mojave desert tortoise as
endangered, making it a "listed" species.  16 U.S.C.
§ 1533(c).  In 1994, as a consequence of this determination,
FWS designated 129,100 acres of land in Utah (the "Desig-
nated Area") as critical habitat for the Mojave desert tor-
toise.

Mr. Doyle owns land in the St. George area of Wash-
ington County in the State of Utah.  All of Mr. Doyle's land
is located within the Designated Area and, hence, is critical
habitat for purposes of the ESA.  He alleges that he has
been attempting to develop his property since the 1980s.

Mr. Doyle worked with Washington County, which then separately applied to FWS for an Incidental Take Permit (the "County Permit") to allow certain actions, including land development, to be permitted within the Designated Area. The application for the County Permit included an HCP detailing how the permitted activities would impact the endangered Mojave desert tortoise and its habitat. The Secretary issued the County Permit in 1996.[1]

The County Permit expressly contemplated that individual landowners within the Designated Area, such as Mr. Doyle, could apply for their own Incidental Take Permits. Mr. Doyle had actually applied for such a permit in 1994, even before the County Permit had been issued.[2] Mr. Doyle never appealed FWS' rejection of his 1994 permit application.

Instead, more than two decades later and without filing for a new permit, in 2015, Mr. Doyle filed suit against the government in the Court of Federal Claims, alleging a taking of his property. The Court of Federal Claims dismissed

---

[1]    The County Permit expired in 2016 and was not renewed until 2020. This four-year gap does not impact the issues involved in this appeal.

[2]    Mr. Doyle faults the Court of Federal Claims for seemingly overlooking his 1994 application and wrongly stating that he had never filed a completed Incidental Take Permit application. *See* Open. Br. at 31-32. Any error the Court of Federal Claims may have committed in its statements about the 1994 application is harmless, as Mr. Doyle presents no evidence that he appealed the 1994 denial, any appeal is barred by the statute of limitations, and the issues before us relate solely to his more recent application.

his complaint for lack of finality. *See Doyle v. United States*, 129 Fed. Cl. 147, 156-58 (2016) (citing *Morris v. United States*, 392 F.3d 1372, 1376 (Fed. Cir. 2004)). Mr. Doyle did not appeal.

Several years later, in March 2020, Mr. Doyle filed another Incidental Take Permit application, this time directed to the 266 acres he owned within the Designated Area.[3] He failed to include an individualized HCP with his application, attempting instead to rely on the HCP that was already part of the County Permit. *See* J.A. 739 (noting reliance on Washington County HCP for permit submission requirements); J.A. 744 (allowing applicants to rely on existing HCP to meet submission requirements); J.A. 745 (stating, in effort to meet HCP submission requirement, "[s]ee current Washington County HCP of 1996").

Consequently, the FWS informed Mr. Doyle his permit application was incomplete and could not be processed until he submitted an individualized HCP addressing his proposed incidental take, which was not addressed in the County Permit or its HCP. As the standard application specifically informs applicants, FWS "cannot issue an Incidental Take permit under Section 10(a)(2)(A) of the Endangered Species Act unless the applicant submits a conservation plan," which must include (among other things) "the impacts that are likely to result from the incidental take *associated with the applicant's activity*." J.A. 742 (emphasis added); *see also* J.A. 745 (listing HCP requirements).

Instead of submitting a conservation plan, Mr. Doyle filed a new complaint in the Court of Federal Claims, in which he once again argued that his property had been taken, this time as a result of FWS' alleged failure to act

---

[3]    Mr. Doyle had previously owned more land in the Designated Area but had transferred all but 266 acres.

on his 2020 permit application. To date, Mr. Doyle has still not submitted a complete application for an Incidental Take Permit for his current property.

The Court of Federal Claims dismissed Mr. Doyle's lawsuit, finding that Mr. Doyle had failed to obtain a final decision and his claim was not ripe. The trial court explained that before an aggrieved applicant for an Incidental Take Permit can sue, he must first file a complete permit application, in order "to first give FWS the chance to balance the interests at stake and reach a final decision on whether its regulatory enforcement obligations overcome the particular property interest at stake." J.A. 4-5. In reaching this conclusion, the Court of Federal Claims rejected Mr. Doyle's contentions that recent Supreme Court decisions eliminated the exhaustion requirement that had previously been a condition for bringing a takings suit based on an administrative agency action and that these decisions replaced the requirement with a "de facto" finality requirement that, he insisted, he satisfied.

Mr. Doyle timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review the Court of Federal Claims' dismissal for lack of ripeness de novo. *See McGuire v. United States*, 707 F.3d 1351, 1357 (Fed. Cir. 2013).

The Court of Federal Claims dismissed Mr. Doyle's complaint pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), for lack of subject matter jurisdiction. J.A. 9; *see generally Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1341 (Fed. Cir. 2021) (discussing when 12(b)(1) dismissal is appropriate). Mr. Doyle asserts that ripeness is not a jurisdictional requirement.

Opinions from the Supreme Court, as well as our own, show that it can be difficult to distinguish between ripeness cases that involve jurisdictional inquiries and those that

turn instead on prudential concerns. *See, e.g.*, *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 733 n.7 (1997) ("[R]ipeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.") (internal quotation marks omitted); *Martin v. United States*, 894 F.3d 1356, 1360 (Fed. Cir. 2018) ("The Court of Federal Claims is without jurisdiction to consider takings claims that are not ripe."); *McGuire*, 707 F.3d at 1358 ("[R]ipeness in the exhaustion context is not a jurisdictional question."). Resolution of this appeal does not require delving into these potential complexities because (as we explain below) Mr. Doyle's regulatory takings claim is unripe, and it is properly dismissed for lack of ripeness regardless of whether that defect is jurisdictional, prudential, or both.

## III

Mr. Doyle presses several arguments on appeal. First, he contends that his takings claim is ripe because the FWS decision is final based on the County Permit. Second, Mr. Doyle insists that recent Supreme Court decisions establish that he need only demonstrate "de facto" finality, which does not require completing the FWS permit process, rendering his suit ripe under this new, more lax, ripeness standard. Finally, Mr. Doyle raised additional points at oral argument, some of which merit discussion.

## A

"[T]he initial denial of a permit is still a necessary trigger for a ripe takings claim." *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1347 (Fed. Cir. 2002).[4] The Court of

---

[4]    An exception to this requirement may be applicable when there is "extraordinary delay in permit processing or bad faith on the part of the agency," *Boise Cascade*, 296 F.3d at 1347 n.6, circumstances Mr. Doyle does not contend exist here.

Federal Claims found Mr. Doyle's claim is unripe because he never received a final decision on his permit application, since he did not submit a complete application. According to the trial court, finality here would have required "submitting an [Incidental Take Permit] accompanied by an HCP," but Mr. Doyle "never complied with this – one and only – prerequisite for challenging the United States' position." J.A. 9. We agree with the Court of Federal Claims that because Mr. Doyle's permit application was defective, and FWS could not come to a final determination with respect to his property, his challenge to the agency action is not ripe. *See MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340, 348 (1986) ("[A]n essential prerequisite to [assertion of a regulatory takings claim] is a final and authoritative determination of the type and intensity of development legally permitted on the subject property.").

As Mr. Doyle acknowledges, FWS has a method for authorizing a "take" even where actions may have an impact on a listed species. An applicant must show that several factors will be satisfied – largely pertaining to the impact of the planned actions on the listed species – before the agency will issue an Incidental Take Permit. *See* 16 U.S.C. § 1539(a)(1)-(2). One of the requirements for an Incidental Take Permit is submission of a HCP. *See* 16 U.S.C. § 1539(a)(2)(A); *see also Loggerhead Turtle*, 148 F.3d at 1238. Without submission of an individualized conservation plan, an Incidental Take Permit application is not complete.

Mr. Doyle admits that he did not submit his own conservation plan, as he tried instead to rely on the HCP that had been included with the County Permit. But that HCP did not pertain to the development Mr. Doyle proposed to undertake on his land and did not show how his actions would impact the endangered species. His application, therefore, was incomplete. Accordingly, FWS was unable to carry out the analysis required to reach a conclusion as to whether Mr. Doyle was entitled to the Incidental Take

Permit he was requesting.  His takings claim, thus, is unripe and was properly dismissed.  *See Howard W. Heck, & Assocs., Inc. v. United States*, 134 F.3d 1468, 1472 (Fed. Cir. 1998) ("[Plaintiff] had not provided the [federal agency] with the information required by law.  We therefore hold that the dismissal of the application as incomplete was not a final decision or a decision on the merits.").

B

The recent Supreme Court decisions on which Mr. Doyle relies do nothing to alter our conclusions.  He points to *Knick v. Township of Scott*, 588 U.S. 180 (2019) and *Pakdel v. City & County of San Francisco*, 594 U.S. 474 (2021) as establishing the proposition that he need not exhaust all administrative remedies and his claim is ripe so long as he can show "de facto" finality.  *Knick* and *Pakdel* are inapplicable here – but, even if they did apply, Mr. Doyle has failed to demonstrate even "de facto" finality.

*Knick* and *Pakdel* did not address federal administrative agency exhaustion, which here would ask whether Mr. Doyle has received a final decision from FWS on an Incidental Take Permit.  These cases pertain, instead, solely to exhaustion of *state* remedies before a takings claim is ripe.  *See Knick*, 588 U.S. at 194 ("[P]laintiffs may bring constitutional claims under § 1983 without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available.") (internal quotation marks omitted); *Pakdel*, 594 U.S. at 480 ("[A]dministrative 'exhaustion of state remedies' is not a prerequisite for a takings claim when the government has reached a conclusive position [under § 1983]").  In *Pakdel*, the Supreme Court expressly distinguished state-procedure exhaustion from federal administrative agency exhaustion, explaining that administrative exhaustion "requires *proper* exhaustion – that is, compliance with an agency's deadlines and other critical procedural rules." 594 U.S. at 480 (internal quotation marks omitted).  Neither

*Knick* nor *Pakdel* dispense with the requirement that, in the context of judicial review of a federal agency action, there must be a "final" decision. *See Pakdel*, 594 U.S. at 478 ("[P]laintiff must show . . . that there [is] no question . . . about how the regulations at issue apply to the particular land in question.") (internal quotation marks omitted); *id.* at 475 ("When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision."); *Knick*, 588 U.S. at 188 ("Knick does not question the validity of this finality requirement, which is not at issue here.").

Quoting *Knick*, 588 U.S. at 189, Mr. Doyle asserts that the Supreme Court has held that "property owners may bring Fifth Amendment claims against the Federal Government as soon as their property has been taken," without having to apply for permits and exemptions with an applicable agency. Open. Br. at 17. Mr. Doyle argues that after the recent Supreme Court decisions, there is now only a "de facto" finality requirement. Mr. Doyle also contends he has shown "de facto" finality because there is no question that FWS will not allow him to develop his land as he intends. Specifically, he asserts that "once the [FWS] listed the tortoise as endangered, it instantly became unlawful to develop [his] land," because any change could "harm" the listed species. Open. Br. at 27. This is simply incorrect.

As the government explains, "Washington County's permits do not prohibit development of Mr. Doyle's land" and "expressly contemplate that private landowners may obtain separate incidental take permits to allow for additional development of private lands in the reserve." Response Br. at 1. In pertinent part, the County Permit states:

> It is possible that a private landowner . . . may seek alternative means of ESA compliance, other than through this Amended

> HCP, and ultimately develop lands within the Reserve. . . . [A] private landowner would need to seek an alternative form of compliance with the ESA for incidental take resulting from their activities.

J.A. 430; *see also* J.A. 372 (Washington County 2020 HCP stating it "will place no restrictions on the use of [private] property within the Reserve").

Allowing for the possibility that development by individual landowners will be allowed, pursuant to an individual Incidental Take Permit, is consistent with the ESA. As the Court of Federal Claims rightly put it, the "ESA's prohibitions on activities that may endanger protected species are not absolute." J.A. 3. Rather, the agency "permit[s] otherwise prohibited take of listed species if FWS finds them to be 'incidental to, and not the purpose of,' any lawful activity." *Id.* (quoting 16 U.S.C. § 1539(a)(1)(B)). If the conditions listed in the statute are satisfied, there is no discretion – the Secretary *shall* issue the permit. 16 U.S.C. § 1539(a)(2). Therefore, there is still a possibility that Mr. Doyle could obtain – and, indeed, could under the ESA be *entitled to* – his own Incidental Take Permit.

Even the regulations on which Mr. Doyle relies undercut his argument that there is no chance he will be permitted to develop his land. In his opening brief, Mr. Doyle directs us to 50 C.F.R. § 402.01, which provides that any activity within a designated critical habitat area must not be "'*likely* to . . . result[] in the destruction or adverse modification of critical habitat.'" Open. Br. at 29 (emphasis added) (quoting 50 C.F.R. § 402.01). Plainly, this regulation contemplates that where an applicant can demonstrate that his activities are *not* "likely" to destroy or adversely modify critical habitat, then the applicant may very well obtain a permit. FWS has not had a chance to undertake this evaluation and, hence, has not arrived at any final decision. *Williamson Cnty. Reg'l Plan. Comm'n*

*v. Hamilton Bank of Johnson City*, 473 U.S. 172, 191 (1985) ("Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question."), *overruled on other grounds by Knick*, 588 U.S. 180.

*Suitum v. Tahoe Regulatory Planning Agency*, also cited by Mr. Doyle, does nothing to compel a different result. The regulation at issue in *Suitum* "permit[ted] no 'additional land coverage or other permanent land disturbance.'" 520 U.S. at 729 (quoting Tahoe Regional Planning Agency Code of Ordinances, ch. 37 § 20.4). Thus, when the agency denied the landowner permission to build on her land, there was no ambiguity in its denial, and it was final. *See id.* at 739. Here, by contrast, there is still a possibility that Mr. Doyle could obtain a permit, so there is no "de facto" finality, and his takings claim is not ripe. *See Boise Cascade*, 296 F.3d at 1348-49 ("[N]o taking occurred because the government never denied the permit."); *Morris*, 392 F.3d at 1376-77 (same).

In short, there is no finality, de facto or otherwise. Unless and until Mr. Doyle files a complete permit application, FWS is unable to make a decision with actual, or even de facto, finality, as to whether to grant or deny his application. His takings claim is unripe and the trial court properly dismissed it.

C

At oral argument, Mr. Doyle's counsel argued that the Court of Federal Claims overlooked "five essential facts." *See* Oral Arg. at 4:15-4:26, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=23-1735_07102024.mp3. Four of these "facts" – that Mr. Doyle's land is in "Zone 3" congressionally-designated conservation area, that the area is a critical, essential habitat for the Mojave desert tortoise, that the County Permit precludes development, and that the Bureau of Land

Management is attempting to acquire the land in the conservation area – were not ignored by the Court of Federal Claims, nor do they alter the finality analysis.[5] At best for Mr. Doyle, they suggest that there may be good reason to suspect that even a complete permit application – one containing an individualized conservation plan – would have been denied by FWS. But such speculation does not render his taking claim ripe.

The same is true of another point Mr. Doyle emphasized during oral argument. He contends that if FWS were to allow him to develop his land, development rights in other parts of the Designated Area would have to be withdrawn. Even assuming this is true, it does not absolve Mr. Doyle of his obligation to submit a complete Incidental Take Permit application, to allow FWS to make a final decision on his request. In fact, Mr. Doyle's argument indicates that there *is* a world in which he could be granted a permit – and the County Permit could be modified. The record before the Court of Federal Claims does not permit a conclusion that there is "no question" his application would be denied. Thus, again, Mr. Doyle failed to show

---

[5]   The fifth point, also raised in his briefing, is the suggestion that there has been a physical taking of Mr. Doyle's land through fences erected by the Bureau of Land Management. He did not present such a claim to the Court of Federal Claims and, therefore, forfeited it. *See Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("[T]his court does not 'review' that which was not presented to the district court."). Regardless, as the government points out any such fences were erected in 1996 by Mr. Doyle's own account and this claim would therefore be barred under the six-year statute of limitations. 28 U.S.C. § 2501; *see also Goodrich v. United States*, 434 F.3d 1329, 1336 (Fed. Cir. 2006).

actual or even "de facto" finality, and his takings claim is unripe.

IV

We have considered Mr. Doyle's remaining arguments and find them unpersuasive.  For the reasons stated above, we affirm the Court of Federal Claims' dismissal order.

**AFFIRMED**